[No. 21740. Department One. September 27, 1929.]

EDWIN ROSENSTROM, *by his Guardian ad litem Albert Rosenstrom, Respondent,* v. NORTH BEND STAGE LINE *et al., Appellants.*[1]

[1]Reported in 280 Pac. 932.

58

*Poe, Falknor, Falknor & Emory,* for appellants.

*Vanderveer & Levinson,* for respondent.

FULLERTON, J.—The minor respondent, Rosenstrom, brought this action to recover for personal injuries received in a collision between an automobile in which he was riding and a passenger stage operated by the appellant North Bend Stage Line. There was a trial by jury in the court below, in which a verdict was returned in favor of the respondent. From the judgment entered on the verdict, the appeal is prosecuted.

The accident which caused the injury occurred on a public street of the city of Renton. Morris street in that city extends north and south, and a street called Third avenue extends east and west, the streets intersecting at right angles. Abutting upon Morris street, some six hundred feet north of its intersection with Third avenue, is a public school, at which the respondent and one Peter Baffaro attended as students. Both were members of the school's football team. The school usually dismissed at three-thirty o'clock in the afternoon. On the day of the happening of the injury, however, the respondent and Baffaro, with a number of other students, were excused from further attendance at the school on that day at three o'clock, in order that they might engage in football practice. When the respondent and Baffaro went to their lockers for their football clothes, each discovered that he had left the key to his locker at his home.

Baffaro had ridden to the school in an automobile, which was then parked in front of the school grounds, and when he discovered that he did not have the key to the locker, he said to the respondent that he was going after it and would take the respondent along with him if he desired to go, and would drive him to his own home so that he could get the key to his own locker. The respondent and Baffaro then got into the automobile and proceeded toward Third avenue, Baffaro driving. As they approached the avenue, the stage of the appellant was proceeding westerly along it, and the vehicles collided at the westerly side of the intersection, or perhaps a short distance beyond its westerly side. Both drivers tried to avoid the collision by turning away from each other, but in spite of the efforts, the automobile crashed into the side of the stage.

Third avenue was designated as an arterial highway, and vehicles driven along it had the right of way over vehicles entering it from intersecting highways. Laws of 1927, chap. 309, p. 801, § 40 (Rem. 1927 Sup., § 6362-40). The public authorities, however, had not placed the usual stop signs at the intersection.

The first question the record orderly presents is whether Baffaro, the driver of the automobile in which the respondent was riding, was guilty of negligence as matter of law. That he was so guilty, we think there is hardly room for doubt. Under the statute, it was his mandatory duty to give way to the approaching stage, and this duty he disregarded. He drove his automobile into the highway immediately in front of the stage, making a collision all but inevitable. It is true he testified that he did not see the stage until it was almost upon him, although he looked in the direction from which it was approaching before he entered the street. But this does not relieve him from a

charge of negligence. The stage was an object of considerable size. It was in the broad light of the day. After he reached the margin of the street, there were no intervening objects between him and the stage, and if he failed to see it, it is evident that he did not look with that degree of care the law requires. The statute cited was enacted in the interests of the public good. Its purpose is to facilitate traffic on the public highways and prevent accidents thereon. It is the duty of every user of the highway to give it heed, and it would seem that under no circumstance would its disregard be justifiable.

Since the driver of the automobile in which the respondent was riding was guilty of negligence, the appellant contends that the respondent must likewise be held guilty of negligence. The contention is founded on the claim that the driver and the respondent were engaged in a joint adventure in which the negligence of the one is necessarily imputed to the other. But we agree with the trial court in its holding that the respondent was an invitee of the driver, rather than engaged in a joint adventure with him. As we pointed out in *State ex rel. Ratliffe v. Superior Court*, 108 Wash. 443, 184 Pac. 348, the authorities have not laid down any very certain rule from which it can be determined whether the given acts or conduct of two or more persons will or will not constitute them joint adventurers, but have rather contented themselves with a consideration of the particular facts of the case before them. There are, however, certain general principles connected with the relation which have received recognition. The relation, as a legal concept cognizable by the courts, must have its origin in contract.

There must be an agreement to enter into an undertaking in the objects or purposes of which the

parties to the agreement have a community of interest and a common purpose in its performance. Necessarily, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance, and an equal right of control over the agencies used in its performance. One or more of the parties may, of course, intrust performance to another or others, but this involves only the law of agency; his rights in the ultimate result and his liabilities for negligent or wrongful performance remain the same. The facts here shown do not bring the actors within these principles. While each found himself in the same situation when he sought to open his locker, the situation did not present a community of interest. The one had no interest, as that term is understood in the law of joint adventure, in procuring the key of the other, and in going for them, their purpose was in no sense common or joint, but rather separate and independent. Nor did the respondent have an equal right with the driver of the automobile in directing the manner in which they should proceed in executing their purposes. He was governed by the driver's will in that respect, and had only the rights any invitee has when riding in the automobile of another.

Plainly, we think, the parties, when going for the keys, were not engaged in a joint adventure, and it follows that the negligence of the driver cannot be imputed to the respondent. We think it unnecessary to review in detail the cases cited by the appellant in support of the contention. Those most nearly approaching the facts of the present case perhaps are *Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320; *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004; *Jensen v. Chicago, Milwaukee & St. Paul R. Co.,* 133 Wash. 208, 233 Pac. 635; and *Martin v. Puget Sound*

*Electric Railway,* 136 Wash. 663, 241 Pac. 360. But in each of these cases the parties were pursuing a common purpose in which each had an equal interest. They were not business ventures, it is true, and possibly extend the rule beyond that which courts from other jurisdictions consent to go; but it was not held, or intended to be held, that the rule is applicable in an instance where this common purpose is not present.

▮ The statute regulating the speed at which motor vehicles may be driven over the public highways (Laws of 1927, chap. 309, p. 770, § 3; Rem. 1927 Sup., § 6362-3), after laying down certain rules of general application to which operators of such vehicles are at all times subject, contains certain particular or special provisions. Among these is a provision limiting the speed of such vehicles to "fifteen miles an hour in traversing an intersection of highways when the driver's view is obstructed." It is also therein provided:

"A driver's view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of three hundred feet from such intersection."

At the southeast corner of the intersection here in question, is a building which prevents a driver of a motor vehicle, traveling westward on the highway, from having, during the last one hundred feet of his approach, a clear and uninterrupted view for a distance of three hundred feet of traffic approaching the intersection from the south. When the respondent offered evidence tending to show this situation, the appellant objected, contending that the conditions on that side were immaterial to any issue in the case,

because the respondent was approaching from the opposite side, and, for that reason, did not belong to the class for whose benefit the statute was enacted.

But we think the statute was enacted in the interest of the general public who have occasion to use the public highways. It is a speed regulation, pointing out a situation where the speed of a motor vehicle must be limited to a certain number of miles per hour, and has the same relation to the general public as do all other speed regulations contained in the statute. The statute cannot have been enacted solely for the protection of those approaching over the intersecting highway. Elsewhere the statute in somewhat emphatic terms requires them to look out for their own safety. The highway over which the stage was traveling was an arterial highway, and persons approaching it in motor vehicles are required to yield the right of way to motor vehicles passing over it, no matter in which direction they may be passing. The necessity or the wisdom of the statute may be a subject of debate, but this must be had before the legislature, not before the courts. It is enough for the courts that the legislature has so enacted, and that the enactment is within its powers.

In this connection the appellant further contends that the violation of the statute was not shown to be the proximate cause of the injury. But as we read the record, the evidence made this a question for the jury, and this being so, the court did not err in submitting the question to them.

At the trial of the cause, the respondent was permitted, over the objection of the appellant, to question the driver of the stage as to his knowledge of the proximity of the school house mentioned to the intersection of the highway over which he was driving, and as to his knowledge of the hour of the day

at which the school held therein closed for the day. The appellant complains, we think justly, that this was error prejudicial to it. The statute provides that a motor vehicle shall not be driven at a speed in excess of "fifteen miles an hour when passing a school house, on school days, between 8 a. m. and 5 p. m." (§ 6362-3, *supra*.) The school house in this instance, as we have before noted, was some six hundred feet distant from the intersection. Its grounds did not abut thereon, and we think that under no tenable construction of the statute can the driver of the stage be said to have been passing it.

The statute must refer to school houses abutting upon the highway, or whose grounds abut upon it, else it can have no definite meaning. If it refers to school houses remote from the highway, whether visible or invisible, no operator of a motor vehicle upon a public highway can ever know whether he is operating it within the law or not. That the matter of the inquiry was prejudicial, there can hardly be room for doubt. Since the questions and the answers thereto received the sanction of the trial court, the jury were led to believe that the appellant owed a higher degree of care in operating its stage across the particular intersection than the law imposed upon it, and it cannot be known with certainty that it did not influence their verdict.

█ The court gave to the jury the following instruction:

"Whenever it develops in the course of a trial that there are witnesses available to one party or the other who, if called, could testify to material facts favorable to such party, then if such party fails to call such witnesses, or to explain his failure so to do, you are justified in assuming that, if called, said witnesses would have testified adversely to the interest of such party."

The general rule thus announced by the court has the sanction of the authorities, but it is of but limited application. In instances where the witness is an actor in the transaction which gives rise to the controversy, and is presumably favorably disposed towards one of the parties and that party does not produce him as a witness, it is presumed that his testimony, if produced, would be unfavorable to him. But the rule is not applicable to strangers who are mere witnesses to the transaction and equally within the call of the one party as the other. In this instance, the persons not called were, for the greater number, Japanese passengers on the stage. They were in no sense actors in the transaction, and there is no presumption that they would be favorably disposed towards either party, or even a presumption that they could testify to any fact material to the controversy; nor was it shown that they were any more within the call of the one party than the other. As it was the respondent who was insisting that the failure of the appellant to call them was to the prejudice of the appellant, the effect of the court's instruction was to make the passengers witnesses for the respondent. This we cannot conceive to be other than prejudicial error.

The judgment is reversed and the cause remanded for a new trial.

TOLMAN, MILLARD, BEALS, and HOLCOMB, JJ., concur.