[No. 24966. Department One. April 17, 1934.]

DOROTHY BATES, *by Albert M. Bates, her guardian ad litem, Respondent,* v. GREGORY TIRK *et al., Appellants.*[1]

[1]Reported in 31 P. (2d) 525.

*McCarthy & Edge, Leo F. Wilson,* and *M. E. Jesseph,* for appellants.

*Robertson & Smith,* for respondent.

STEINERT, J.—This is an action to recover damages for injuries sustained by a minor in an automobile collision. The jury returned a verdict for plaintiff. From a judgment on the verdict, defendants have appealed. For the sake of convenience, the defendant Gregory Tirk will be hereinafter referred to as though he were the only appellant.

At the time of the accident, respondent was sixteen years of age. She and her sister Virginia, who was then eighteen years of age, lived with their parents, Mr. and Mrs. Albert M. Bates, in Spokane, Washington. Mr. Bates owned a two-seated Star automobile, which was kept and used for family purposes. About four blocks from the Bates home lived Royer Bogen-

reif, a young man twenty years of age and a friend of the Bates family. The three young people were all students at the same high school. Bogenreif had, on frequent occasions, been out riding with various members of the Bates family, in their Star automobile, and on such occasions had usually done the driving.

On October 23, 1932, a football game was scheduled to be played at the high school grounds, which was several miles distant from the Bates and Bogenreif homes. Bogenreif went to the Bates home in the forenoon of that day, with the intention of taking the girls to the football game, provided that they were allowed to use the Star car. Virginia asked her father whether they might have the car, and, on being told that they were going to the football game, the father gave his consent. It appears to have been understood that Bogenreif was to drive, although his driving was not made a condition of the father's consent to their use of the car. Bogenreif replenished the car with two gallons of gasoline purchased by himself. The three young people then rode in the car, with Bogenreif driving, to the school grounds and witnessed the game.

It appears that a second game was also scheduled to be played the same afternoon. After the first game, the party of three left the grounds, intending to drive to Bogenreif's home to enable him to get his overcoat. They also intended, it seems, to return for the second game. On leaving the grounds, they invited two other boys, who were also high school students, to accompany them in the car. The invitation was accepted. The course along which they then drove, up to the time of the accident, was over the very road which they would have taken in going to the home of the girls; the deviating road leading to the Bogenreif

home was about two miles distant from the place where the accident occurred and just a short distance from the Bates home.

The car proceeded southward from the football field along Regal street to Nebraska avenue. While crossing the intersection of the two streets, the car was struck by an automobile driven by appellant, coming from the east. Appellant's car ran directly into the left side of the Star car, hurling it over onto the sidewalk on the southwest corner of the intersection. Respondent was thrown from the car and sustained very painful and serious injuries, for which this action was brought.

The complaint charged appellant with carelessness and negligence, in that he drove at the excessive speed of forty miles per hour; in that he failed to have his car under control and neglected to give any warning or to apply his brakes; and in that he failed to turn aside and yield the right of way to the car in which respondent was riding. The evidence concededly presented such a conflict upon questions of fact as to make the case one for the jury, under proper instructions.

The assignments of error relate to the admission of certain evidence, the refusal to grant a mistrial, the refusal to give certain instructions and the giving of others, and the refusal to grant a new trial on the grounds of excessiveness of the verdict and improper argument of counsel.

A witness was permitted to testify, over appellant's objection, that, in his opinion, the appellant was very drunk at the time of the accident. Later on in the course of the trial, the court, on its own motion, struck the evidence and admonished the jury to disregard it. Appellant contends, first, that this evidence

was improper, because the complaint contained no allegation of intoxication. In passing on this question, we limit ourselves to the specific ground of appellant's assignment of error. Appellant did not claim surprise.

If the driver of an automobile exercises the care which the law requires, the fact that he is intoxicated at the time does not, of itself, furnish any ground of liability, in the absence of any statute thereon. However, the fact of intoxication is admissible on the issue of negligence where the evidence of negligence is conflicting or different inferences may be drawn therefrom. 2 Blashfield Cyc. Automobile Law, p. 1677; *Finn v. Sullivan,* 110 Cal. App. 38, 293 Pac. 639; *Landham v. Lloyd,* 223 Ala. 487, 136 So. 815; *Bray-Robinson Clothing Co. v. Higgins,* 210 Ky. 432, 276 S. W. 129; *Powell v. Berry,* 145 Ga. 696, 89 S. E. 753, L. R. A. 1917A, 306.

A person under the influence of intoxicating liquor is unfit to operate an automobile, not only because of the excessive speed that he may attain or the devious course that he may follow, but also because his brain may not properly function in coordination with his hands or his feet, even under the ordinary circumstances attendant upon the progress of traffic. The jury is therefore entitled to consider evidence of intoxication as bearing on the question of negligence.

■ Appellant next contends that, the evidence having been withdrawn by the court, it was error not to discharge the jury from further consideration of the case. If, for any reason, the admission of this evidence be considered improper, its effect was cured by its withdrawal and the court's emphatic instruction to the jury to disregard it. Errors of this nature will be considered as having been corrected by proper

admonition or instruction from the court to the jury, unless it is affirmatively shown, or this court is otherwise convinced, that the admonitions and instructions have failed of their purpose. *Bayers v. Barry,* 114 Wash. 252, 194 Pac. 993; *Samuels v. Hiawatha Holstein Dairy Co.,* 115 Wash. 343, 197 Pac. 24; *DeHoney v. Gjarde,* 134 Wash. 647, 236 Pac. 290; *Slattery v. Seattle,* 169 Wash. 144, 13 P. (2d) 464.

There is no affirmative showing of any prejudice here. Nor are we convinced that the admonition given by the court failed of its purpose. The testimony, given in response to a single question, was but the conclusion of the witness, and must have been so understood by the jury. The admonition of the court covered the form and extent of the testimony and specifically directed that it be disregarded. That was sufficient.

■ Appellant's third assignment of error is upon the refusal of the court to give an instruction on the subject of joint venture. Another assignment is based upon the giving of an instruction by the court to the effect that respondent was, as a matter of law, an invitee; and that, therefore, the negligence, if any, of Royer Bogenreif could not be imputed to her. These two assignments may best be discussed together, since they both relate to the question of the status of the respondent.

The rule as to the elements necessary to constitute a joint venture has been definitely established in this state. There must be an agreement to enter into an undertaking, in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance; and each of the parties must have an equal right to a voice in the manner of its performance and an equal right of

control over the agencies used in its performance, although one may intrust the performance to the other, or others. *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932; *Sanderson v. Hartford Eastern R. Co.,* 159 Wash. 472, 294 Pac. 241; *White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457; *Colvin v. Simonson,* 170 Wash. 341, 16 P. (2d) 839.

In the case of a joint venture, the negligence of one of the parties to the enterprise is imputed to the others, where the action is brought against a third party. *O'Brien v. Woldson,* 149 Wash. 192, 270 Pac. 304, 62 A. L. R. 436. On the other hand, where a party is simply a guest or an invitee upon the premises or property of another, the negligence of the host or inviter is not imputable to the guest or invitee. *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932; *Shirley v. American Automobile Ins. Co.,* 163 Wash. 136, 300 Pac. 155.

What we have to determine here is whether, under the evidence, the status of the respondent was a question of fact for the jury to determine, or whether the evidence simply presented a question of law to be determined by the court, and, if determinable by the court, then what, under the evidence, the actual status of the respondent was.

The initial undertaking was clearly a joint venture on the part of the three occupants of the car. There was a community of interest, a common purpose and a joint control of the agency used, although its actual operation was intrusted to one of them. We are not concerned in this action with the legal relationship existing between the owner of the car and its driver, because the owner is not suing on his own behalf, nor is he being sued. The question here narrows itself to the situation and relationship existing between

the occupants of the car, particularly at the time of the accident.

It was about three o'clock in the afternoon when the three young people left the football field at the end of the first game. The two boys whom they invited to ride were also leaving. The course which they were following, up to the point of the accident, and which they would have followed for a considerable distance thereafter, was exactly the same course which they would have taken to go to the Bates home. In the conversations at the Bates home in the forenoon regarding the arrangement for the afternoon's entertainment, only one football game was spoken of, and it was understood that the three young persons were to return home after the game. The second game was an afterthought and a later consideration on their part. Although all three of them testified that the occasion for the intermediate trip was to permit Bogenreif to get his overcoat, they were all interested witnesses, and the jury was not compelled to believe their testimony.

There were sufficient facts and circumstances disclosed by the evidence, some of which have already been narrated, from which the jury might well have drawn the conclusion that they were, in fact, returning home from the game, as they had promised they would. If they were returning home, then the relationship of joint adventurers still continued, and the negligence, if any, of the driver would be imputable to the others. There was material evidence in the case to the effect that the driver was guilty of negligence which proximately contributed to the collision and accident. Whether the relationship between Bogenreif and the two girls at the particular time was that of joint adventurers was, under the evidence,

a question for the jury to determine. The requested instruction upon the issue of joint venture should, therefore, have been given.

There is another aspect to the situation which argues to the same conclusion. Assuming that the car was being used at the time for a purpose that was not authorized by its owner, the case would be the same as though the three parties had taken the car in the first instance without permission. They, themselves, recognized that it was necessary to secure such permission before they could use the car. Without that permission, they would be wrongdoers. The evidence was sufficient to warrant the jury in believing that, in the transaction involving the particular trip, each acted voluntarily and that all acted in unison; that they were then engaged in a common enterprise and were doing a thing necessary or convenient for their mutual enjoyment of the second game of football. Under such circumstances, none would have exclusive control of the agency used, but all would, at least, be upon a par, even though the actual operation of the car was intrusted by two of them to the third. In doing so, however, they would make him their agent. None of them, therefore, could be classed, *as a matter of law,* as an invitee of the other. The giving of the instruction in that form was, therefore, error.

The respondent cites and relies upon the case of *Schnebly v. Bryson,* 158 Wash. 250, 290 Pac. 849. In that case, Bryson, the owner of a car which had been purchased for family purposes, had intrusted it to his daughter and her escort to attend a fraternity dance. After the dance had been in progress for some time, a number of the young men at the party decided to stage a fake raid as a part of the evening's program.

The daughter's escort was designated to make a trip to the police station to secure a policeman's uniform. The car was used for that purpose by the escort, accompanied by the daughter. On the way to the police station, a collision occurred resulting in injuries to a third party, and suit for damages was thereafter brought against the owner of the car. It was held that, under the facts of the case, the car was not being used for a family purpose, and that, therefore, the owner was not liable.

We have an entirely different situation in this case. The relationship of agency between the driver and the owner of the car is not here involved. The relationship with which we are presently concerned is that existing between the occupants of the car at the time that the injury was inflicted upon one of them. The *Bryson* case is not in point upon the facts before us.

Our conclusion upon the foregoing questions renders it unnecessary to pass upon the matters of excessive damages and improper argument of counsel, as presented in appellant's final assignment.

The judgment is reversed, with direction to the court to grant a new trial.

BEALS, C. J., MITCHELL, MILLARD, and BLAKE, JJ., concur.