[No. 28031. *En Banc.* March 6, 1941.]

SAM MANOS, *Respondent,* v. KENNETH JAMES, *Appellant.*[1]

[1]Reported in 110 P. (2d) 887.

*H. Earl Davis,* for appellant.

*Robertson & Smith* and *Joseph A. Albi,* for respondent.

DRIVER, J.—Plaintiff brought this action to recover damages for personal injuries sustained while riding in an automobile owned and operated by the defendant. The complaint contained the following allegations relative to joint adventure:

"That on or about the 10th day of September, 1936, plaintiff and the defendant entered into an agreement constituting a joint venture whereby the defendant was to furnish an automobile and the plaintiff and defendant were to divide the expenses, including gas, oil, food and other incidentals, in connection with a trip which said parties were to take from Spokane, Washington, to Seattle, Washington.

"II.

"That in pursuance of said agreement defendant furnished a certain Zephyr Lincoln automobile, and the plaintiff, at the request of said defendant, purchased certain gas, oil and food on said trip."

Other allegations of the complaint were to the effect that, as he was proceeding down Vantage hill grade, the defendant negligently drove his automobile at an excessive rate of speed, causing it to swerve to the right against a guard-rail post, then back to the

left and across the road against a pile of rocks on the hillside, thereby inflicting upon plaintiff the injuries which were the basis of his action. The answer denied these allegations of the complaint.

The trial to a jury resulted in a verdict for the plaintiff. Defendant's motions for nonsuit, for directed verdict, for judgment notwithstanding the verdict, and for a new trial, were severally denied, and judgment was entered on the verdict. This appeal by the defendant followed.

Appellant assigns as error the denial of his motions before and after judgment challenging the sufficiency of the evidence. He maintains that respondent failed to make a case for the jury on his claim of joint adventure, and, there being no evidence whatsoever of any intentional injury, the trial court should have held, as a matter of law, that respondent's action was barred by the host and guest statute, Laws of 1937, chapter 189, p. 911, § 121 (Rem. Rev. Stat., Vol. 7A, § 6360-121 [P. C. § 2696-879]), which provides:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator: . . ."

It should be stated at the outset that this case will be considered and determined on the theory presented by the pleadings and the trial court's instructions, which was that respondent must necessarily have been either (1) engaged in a joint adventure with appellant, or (2) an invited guest or licensee in appellant's automobile, without payment for transportation; and, in order to recover, respondent must prove that he came within the former category.

The determinative facts, as the jury could have found them from the evidence, may be stated as follows:

Appellant and respondent had been strangers until they chanced to meet in Spokane on September 7, 1936. Each then learned that the other wanted to go to Seattle, appellant with his wife for a vacation and respondent to resume his work as a bartender in a Seattle tavern. According to the uncontradicted testimony of the respondent, the following conversation took place at this first meeting:

"Well, I was talking to a couple of friends of mine and James and his wife started talking and they heard me say I was going to Seattle, Washington, and he finally said he was going over to Seattle and he said, 'If you are going over there would you mind to ride over with me?' And I said, 'I don't know, maybe I will,' and he said, 'I will tell you, it will cost you cheaper if you go over with me'; that we would go half and half on the expense of gas and oil, and I said, 'Well, if that is the case it will be cheaper for me and I will go,' and I said, 'When do you figure on leaving?' and he said, 'I figure on leaving in a few days,' and it was on the 10th of September, in the morning, I couldn't tell the hour it was that he come over there and he said, 'Let's go to Seattle.' "

On cross-examination, respondent testified relative to this conversation as follows:

"Q. Was that the time you made this so-called agreement to go to Seattle with him [appellant]? A. Yes, sir. Q. And you say he said he was going to Seattle and asked you to go along? A. Yes. Q. And he asked that you pay your share of the expenses? A. Yes. Q. Or was it that you heard he was going to Seattle and asked if you could go along? A. It was him that gave me the offer. Q. And when you accepted did you tell him you would pay part of the expenses? A. Yes. Q. What agreement did you have about this expense? A. Well, he told me if we go

over, whatever we eat and the gas and the oil and everything until we get into Seattle, he says for me to pay it and when we get over there he will divide it. Q. How much did you and James figure it would cost to go to Seattle when you had this conversation with him? A. Not more than eight or ten dollars. Q. Did you have such a conversation with him? A. He said, 'I don't think it will cost more than eight or ten dollars to go over.'"

There was also testimony to the effect that, at the time of this conversation, it had been further agreed that appellant and respondent would leave Spokane on the morning of September 10th, and the trip would be completed in one day without any overnight stop en route. Shortly before noon of the appointed day, they started out on their prearranged journey, appellant driving his sedan, and his wife and the respondent riding with him in the front seat, the luggage being carried on the rear seat. They stopped at a service station a few miles out of Spokane, where respondent bought gasoline and oil for the car, amounting to $6.35. He took a receipt for the purchase because appellant suggested, "Keep track of what you spend and when we get to Seattle we can divide expenses." At Soap Lake they stopped and had lunch, for which respondent likewise paid. They then drove on through Quincy, and had started down the Vantage grade when the accident occurred substantially in the manner alleged in the complaint. The speed at which the appellant was driving when he lost control of his car was variously estimated by the witnesses to be from sixty to seventy-five miles an hour.

The first and principal question to be determined is whether, under the circumstances just related, the trial court was justified in submitting to the jury the issue of joint adventure.

In the case of *Carboneau v. Peterson,* 1 Wn.

(2d) 347, 95 P. (2d) 1043, this court, after exhaustively analyzing its prior decisions, clearly and definitely restated the principles of joint adventure as follows:

"Briefly stated, a joint adventure arises out of, and must have its origin in, a contract, express or implied, in which the parties thereto agree to enter into an undertaking in the performance of which they have a common purpose and in the objects or purposes of which they have a community of interest, and, further, a contract in which each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in the performance. Thus, we note (1) a contract, (2) a common purpose, (3) a community of interest, (4) equal right to a voice, accompanied by an equal right of control."

Applying these principles in the order stated in the *Carboneau* case to the facts of the case at bar, it seems apparent that appellant and respondent had intended to, and did, enter into a mutually binding contract, informal though it was, to jointly effect the transportation of their persons from Spokane to Seattle. This contract, which had been performed in part before respondent's cause of action arose, was no mere understanding of the parties to accompany each other on some social excursion with an incidental arrangement to share expenses. Appellant and respondent, as strangers, had made a purely business deal with each other on the occasion of their very first meeting, and there is nothing in the record to indicate that the transaction had any social overtone whatsoever.

The common purpose which the parties had in their undertaking was to transport themselves from one place to another. In this purpose, and it might be said identified with it, they had a community of interest, because it was to their mutual advantage to be

carried to their common destination; also, it would seem, they had, as a further common interest, their mutual purpose of making the journey expeditiously and with a material saving of expense to each of them. It is true that appellant and respondent had not intended to do the same things after their arrival in Seattle, but, under the circumstances, that is not a controlling factor. The undertaking of the parties, under the terms of their contract, was to travel to Seattle together in appellant's automobile. Upon their arrival in that city, the contract would have been fully performed and the undertaking wholly accomplished. What the parties may have intended to do thereafter, was entirely immaterial and could in no way have affected the validity of their contract of joint adventure.

This conclusion is supported by *Keisel v. Bredick,* 192 Wash. 665, 74 P. (2d) 473, and *Meacham v. Gjarde,* 194 Wash. 526, 78 P. (2d) 605. The facts of the former case are quite similar to those in the case at bar. Eleven men employed by the Federal government at the Bremerton navy yard had been sent to work on a project near Neah Bay. They entered into a verbal agreement with each other relative to securing transportation to Bremerton in order that they might visit their respective families. Under the terms of the agreement, two of them were to furnish automobiles for the journey, and the expenses were to be divided equally among those who rode in the respective cars. This court held that there was sufficient evidence in support of each of the essential elements of joint adventure to take the case to the jury on that issue. As to the elements of common purpose and community of interest it was said:

"The object was to return to the city of Bremerton from which they had come some weeks before, in order

that they might spend the week-end at their respective homes, and the common purpose was to go at the minimum of expense instead of each man paying approximately fifteen dollars bus fare for the round trip."

In support of his contention that the element of a common purpose was not established in the instant case, appellant cites the following: *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932; *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043, *supra;* and *Moen v. Zurich General Accident etc. Ins. Co.,* 3 Wn. (2d) 347, 101 P. (2d) 323.

In the *Rosenstrom* case, two boys, who were members of a public school football team in the city of Renton, discovered, when they went to get their football clothes for practice one afternoon, that each of them had left the key to his locker at home. One of the boys had an automobile parked nearby, and he asked the other to go with him so that each might get his own locker key. This court, holding that the relationship of joint adventure had not been established, commented on the lack of common purpose and community interest as follows:

"While each found himself in the same situation when he sought to open his locker, the situation did not present a community of interest. The one had no interest, as that term is understood in the law of joint adventure, in procuring the key of the other, and in going for them, their purpose was in no sense common or joint, but rather separate and independent."

In that case, the only purpose each boy had was to get his own key and return to his own locker. The automobile trip from school to their respective homes was only an incidental means which they employed to accomplish their several purposes. In the case at bar, on the other hand, the mutual purpose of the parties was to transport themselves from one place to another

as the sole and final objective of their joint undertaking.

In *Carboneau v. Peterson*, the second case cited by appellant, a young man showed two of his friends an automobile he had recently purchased and expressed his intention to drive it upon a trial excursion that night. The three of them then informally agreed that they would go from Everett to Seattle together and attend a picture show. It seems to have been tacitly understood that, in accordance with their usual custom on similar occasions, they would share equally the cost of the gasoline necessary for the trip. It was held that the owner of the car and his two friends were not, under the circumstances, joint adventurers. With reference to the requirements of common purpose and community of interest, it was said:

"The purpose of the instant trip was either merely to try out the car or else was one of social companionship. If it was to try out the car, then there was no community of interest between the parties, for respondent alone would have been subserved by that. If the purpose of the trip was for social companionship, the essential element of intention to enter into mutually binding covenants would be lacking. The attendance upon the picture show was merely incidental to the trip; it was in no sense its object or purpose."

The holding in that case was manifestly based upon a different factual situation than that presented in the instant case.

*Moen v. Zurich General Accident etc. Ins. Co.*, the third case cited by the appellant, is not so readily distinguishable, but it does differ in some material aspects from the case at bar. In that case, it was held that the following allegations of the complaint were not sufficient, as against a general demurrer, to show the existence of a relationship of joint adventure:

*"That the said Frances G. Carlson on the 20th day of October, 1934, entered into an oral agreement with the said Pope and Floyd whereby the said Frances G. Carlson did contribute to and pay to Pope and Floyd a portion of the operating expenses of the above referred to automobile in consideration of receiving transportation in said car from Wenatchee to Seattle. That the purpose of said agreement was to obtain transportation to Seattle for all parties referred to at the lowest possible expense."*

It will be noted that the quoted portion of the complaint did not allege an agreement whereby the parties undertook to transport themselves from Wenatchee to Seattle through the instrumentality of a common agency, nor did it state that the latter city was to be the common and final destination of their joint undertaking. The complaint was found to be deficient, it seems, primarily because it failed to show clearly the purpose of any of the parties, and not because it disclosed purposes not common to them or a purpose in which they did not have a community of interest. This is indicated in the following quotations from the opinion:

"Thus, the question presented is: Does a contract of joint adventure result when one person pays to another a portion of the expense of a journey, for the sole purpose of making the trip 'at the lowest possible expense' to the parties concerned?

"The allegation that 'Frances G. Carlson was riding in said automobile and at said time was engaged in a joint enterprise or joint venture with the said Pope or Floyd' is a conclusion of law, and adds nothing to the allegations upon which appellant must rely in order to establish the existence of a joint enterprise. *Hamp v. Universal Auto Co.*, 173 Wash. 585, 24 P. (2d) 77.

. . .

*"The complaint does not disclose the purpose which any of the people had in planning their trip to Seattle.* Each may have had an entirely different and inde-

pendent reason in so travelling. *Their final destinations may have been equally diverse. The reason for the Seattle trip is not mentioned; only the purpose of making the payment to Pope and Floyd is set out in the complaint.*" (Italics ours.)

The *Moen* case does not purport to hold that the transportation of the persons of two or more individuals from one place to another, by means of a common agency, could never, under any conceivable factual situation, be the subject of a valid contract of joint adventure between them.

The fourth and last element of joint adventure, as stated in the *Carboneau* case, is that of equal right to a voice in the performance of the undertaking and an equal right of control over the agencies used in the performance. This element arises out of, and may be inferred from, the terms of the contract between the parties. *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, *supra,* and *Lampe v. Tyrell,* 200 Wash. 589, 94 P. (2d) 193.

In the instant case, as appellant points out, the respondent freely admitted, on cross-examination, that he did not tell the appellant what route to travel, nor otherwise exercise, or attempt to exercise, any control over appellant's car. But that does not negative his *right of control* under the contract. Only one person at a time can safely drive an automobile, and, customarily, joint adventurers entrust the task of operating the vehicle to one of their own number as their agent. *Bates v. Tirk,* 177 Wash. 286, 31 P. (2d) 525; *Keisel v. Bredick,* 192 Wash. 665, 74 P. (2d) 473, *supra.* The principle is peculiarly applicable to the present case because the record shows that the respondent had never driven an automobile.

Although the appellant, as a witness in his own behalf, admitted that, just before the accident, he had

been driving down a three per cent grade, over a winding road along a precipitous mountain side, at the rate of sixty miles an hour, his counsel now maintains that the evidence was not sufficient to take the case to the jury on the issue of negligence. It is contended that the proximate cause of the accident was the deflation of a tire on appellant's car, which threw it out of control, through no fault on his part. That same contention was advanced by appellant at the trial and was substantiated by testimony to the effect that, after the accident, the inner tube of one of appellant's tires was found to have a small hole in it, which appeared to have resulted from pinching, or chafing. There was some other supporting evidence, but, taken as a whole, it fell far short of constituting proof of the cause of the accident as a matter of law. It was sufficient to raise a question of fact only, and that question was presented to the jury under adequate and proper instructions by the trial court.

Appellant also assigns as error the giving of the court's instructions No. 7 and No. 8. The former merely recited the governing statutory provisions relative to rules of the road and maximum rate of speed for a motor vehicle on the public highways, and quoted the pertinent portion of the host and guest statute. The latter instruction advised the jury of the essential elements of a joint adventure substantially as stated in *Carboneau v. Peterson,* and also informed the jury that it is the duty of the operator of an automobile used in a joint adventure trip to exercise ordinary care for the safety of a coadventurer. Both instructions were proper under the issues and correctly stated the applicable law.

Appellant vigorously contends that the trial court erred in refusing to give his proposed instruction No. 7. Omitting the first two paragraphs, which recite

708

that portion of the host and guest statute quoted near the outset of this opinion, the proposed instruction reads:

"You are further instructed that 'payment for such transportation' as used in the above statute means a benefit conferred upon the owner or operator of such car, considered and intended to pay for such transportation, and not merely a gesture of good will or good fellowship on the part of the passenger to the owner or operator of the car.

"If, therefore, you find from the evidence in this case that the defendant invited or permitted the plaintiff to ride in his car on this trip from Spokane to Seattle, and you further find that any contributions made by the plaintiff toward the expense of the trip, if you find any such contributions were made, were not considered as or intended to be in payment for such transportation, then you should find that the plaintiff was an invited guest or licensee in such car on said trip, and under the above provisions of the law, has no cause of action against the defendant and cannot recover in this action, unless you further find from the facts that the accident or collision was intentional on the part of the defendant James."

As has been stated, the present case was tried and submitted to the jury on the theory that respondent must necessarily have been either (1) a joint adventurer, or (2) an invited guest or licensee without payment for his transportation. Respondent made no contention that he sustained any other alternative relationship to appellant, such as passenger for hire or for compensation.

The proposed instruction does not correctly state the law of joint adventure relative to incidental or good will contributions to expenses. When, as in the case at bar, a rider in an automobile buys gasoline and oil, or otherwise assists in defraying the expenses of a joint enterprise, such contributions are not, in any sense, "considered as or intended to be in payment for

such transportation," but are made pursuant to, and in the performance of, the joint adventure contract of the parties. Such rider does not pay his fare by helping to defray the expenses of the trip, but, rather, he discharges his contractual obligations as a joint adventurer. If it should appear that his contributions are merely "a gesture of good will or good fellowship," such circumstance would be material, but only as indicating that the parties had not intended to enter into that mutually binding contract which has been called the *sine qua non* of the relationship of joint adventure. If there were a joint adventure relationship between respondent and appellant, then, even though the former's contributions to expenses were not "considered as or intended to be" *payment for transportation,* the respondent, nevertheless, was not a guest or licensee within the meaning of the host-guest statute, and the proposed instruction was, therefore, properly rejected.

■ Appellant has further assigned as error the trial court's refusal to give his proposed instruction No. 8. All that need be said as to such assignment is that the substance of the proffered instruction was fully covered and included in the instructions given by the court.

■ ■ Over appellant's objection, respondent's exhibit No. 3, an X-ray film, or negative, showing the lower portion of respondent's spine, was admitted in evidence, and a chiropractor, called as a witness, was then permitted to read, or interpret, the film. Appellant assigns as error both the admission of the exhibit and its interpretation by the witness.

The witness was a chiropractor and licensed to practice as such by the state of Washington. He was a graduate of the Palmer School of Chiropracty at Davenport, Iowa, where he had taken a three-year course

and had studied anatomy, spinography, and X ray, and had been taught the technique of the operation of the X ray and the interpretation of the findings of X ray as applied to chiropracty; and, after leaving school, he had made use of and interpreted X-ray negatives "all the time" during his fourteen years of practice as a chiropractor. This witness did not personally take the X-ray picture in question, but he had been present when it was taken by an X-ray technician. He had seen the film removed from the machine, and had put an identifying legend upon it as soon as it was developed. The appellant's contention that the exhibit was not properly identified is without merit.

After the X-ray film had been admitted in evidence as an exhibit, the witness was allowed to testify in what respect it showed deviation from a normal spine from a chiropractic standpoint. In this regard, he stated that it indicated a left rotary scoliosis, which is a sort of bending, or curvature, of the spine. Under the circumstances, the trial court did not err in permitting the witness to so testify. *Henslin v. Wheaton,* 91 Minn. 219, 97 N. W. 882, 103 Am. St. 504, 64 L. R. A. 126; *Dorr, Gray & Johnston v. Headstream,* 173 Ark. 1104, 295 S. W. 16; *Aponaug Mfg. Co. v. Carroll,* 183 Miss. 793, 184 So. 63; *Ladlie v. American Glycerin Co.,* 115 Kan. 507, 223 Pac. 272; *Whipple v. Grandchamp,* 261 Mass. 40, 158 N. E. 270, 57 A. L. R. 974.

In the case of *Whipple v. Grandchamp,* just cited, which held that a chiropractor was competent to interpret X-ray pictures admitted in evidence and to testify whether they indicated an abnormal condition, it was said:

"It is plain that knowledge of the human anatomy may be acquired to a high degree from a student of that subject, although such a person is neither licensed nor registered as a doctor of medicine; and it is equally clear, as matter of common knowledge, that in many

professions other than medicine, the use of the X-ray is familiar, and that it is read in connection with the human anatomy."

 On cross-examination, respondent was asked if he had not sustained an injury to his back for which he had received compensation while he was working in California in November, 1933. He answered that he had no recollection of any such occurrence, and denied that he had been in California at the time mentioned. He was then shown a cancelled bank draft which bore the endorsement "Sam Manos" in longhand, and asked if this writing were his signature. He denied that it was. He was then requested to, and did, write his signature on a sheet of paper. Appellant's counsel called as a witness a handwriting expert, and, after directing him to examine and compare appellant's known signature with the questioned endorsement upon the draft, asked him whether, in his opinion, they were written by the same person. An objection to the question was sustained. Appellant assigns this as error.

The bank draft did not show on its face that it represented compensation for any back injury, nor was it otherwise connected by the evidence with any material issue in the case. The testimony was, therefore, properly excluded, as its only purpose was to impeach a witness upon collateral facts. It is a well-settled rule that a witness can not be impeached by showing the falsity of his testimony concerning facts collateral to the issues; in other words, an answer by a witness, upon cross-examination, with reference to collateral facts, is conclusive on the party cross-examining him. 28 R. C. L. 613, § 202; *State v. Johnson,* 192 Wash. 467, 73 P. (2d) 1342, and cases therein cited.

The judgment is affirmed.

MAIN, BEALS, MILLARD, and BLAKE, JJ., concur.

712

SIMPSON, J. (dissenting)—The doctrine of joint adventure is a relatively new development in the courts of this country, and was not recognized as an entity at common law. The law of partnerships was the parent of this new concept, and the general principles which govern the parent have afforded courts the basis for the principles governing the offspring. *Goss v. Lanin,* 170 Iowa 57, 152 N. W. 43; *Sommerfield v. Flury,* 198 Wis. 163, 223 N. W. 408; *O. K. Boiler & Welding Co. v. Minnetonka Lumber Co.,* 103 Okla. 226, 229 Pac. 1045; *Finney v. Terrell,* 276 S. W. (Tex. Civ. App.) 340; *State ex rel. Ratliffe v. Superior Court,* 108 Wash. 443, 184 Pac. 348.

Keeping the origin of this doctrine in mind, and remembering that the joint adventure relationship is really nothing more than a partnership relationship confined to a single transaction, I find it impossible to recognize the existence of a joint adventure in the case at bar. The case of *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, has been regarded by this court as the landmark case governing joint adventure relationship in this state, and the principles which it enunciates have been cited in practically all of the subsequent cases in which we have found ourselves confronted with the question. Those principles, predicated on partnership law, have been set forth in the majority opinion in *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043. To repeat, before this relationship may be found to exist it is necessary that there be (1) a contract, (2) a common purpose, (3) a community of interest, and (4) an equal right to a voice, accompanied by an equal right of control.

The majority opinion has sought to distinguish the case at bar from the *Rosenstrom* case. In the *Rosenstrom* case, two boy students found that they had left their locker keys at their respective homes, and they

proceeded in the car of one of the boys to get their keys. During the course of the trip, there was a wreck, and the passenger student sued the driver of the other car for damages. The defendant sought to impute the negligence of the student driver to the student passenger, on the ground that there had been a joint adventure. As the majority opinion indicates, this court rejected the contention that a joint adventure had existed, one of the principal reasons for our action having been the absence of a community of purpose and of interest.

The majority have quoted from the *Rosenstrom* case as follows:

"While each found himself in the same situation when he sought to open his locker, the situation did not present a community of interest. The one had no interest, as that term is understood in the law of joint adventure, in procuring the key of the other, and in going for them, their purpose was in no sense common or joint, but rather separate and independent."

In order to follow the holding in the *Rosenstrom* case, we should state as follows: While each found himself in the same situation in that he desired to go to Seattle, the situation did not present a community of interest. The one had no interest as that term is understood in the law of joint adventure in the object to be attained by the other. Their purpose was in no sense common or joint, but rather separate and independent. Respondent had no interest in the pleasure or vacation trip which appellant sought to enjoy in the city of Seattle. Appellant had no interest in the job to which respondent was returning. Common purpose means a common enterprise in which the parties are engaged.

The majority holds that,

"In the case at bar, on the other hand, the mutual purpose of the parties was to transport themselves

from one place to another as the sole and final objective of their joint undertaking."

That fact, however, does not constitute a joint adventure within the meaning of any of our former cases. It is a distinct departure from all of our holdings. It is a new conception of the doctrine of joint adventure to which I cannot give my assent. Hereafter, we must abandon all of our old cases and hold that a joint adventure is present at any time two or more people decide to make a journey, no matter what the individuals desire to accomplish during the trip or after reaching a common or different destination.

As for the additional reason for a distinction ascribed by the majority opinion, namely, that the sharing of expenses showed a mutual purpose and interest in effecting a material saving of expense, the case of *Moen v. Zurich General Accident etc. Ins. Co.*, 3 Wn. (2d) 347, 101 P. (2d) 323, refutes that reason. In the cited case, we stated:

"Appellant urges that the first requirement, the existence of a contract, is satisfied by the allegation of the oral agreement to pay a portion of the expenses of the trip in consideration for receiving transportation to Seattle; that the 'community of interest' among the three persons was to get to their destination; and that their 'common purpose' was to get there as cheaply as possible.
"After reading and considering together the several allegations pertinent to this issue, we are unable to find any statement which shows that the parties had a common purpose and community of interest which would meet the following definition in *Rosenstrom v. North Bend Stage Line*, 154 Wash. 57, 280 Pac. 932: . . ."

Therefore, the mere desire to save on the expenses of the trip was not such a common purpose as would satisfy the requirements of the joint adventure rela-

tionship, but was merely a motivating factor which induced the parties to take the trip together.

Since the desire to save expenses was not enough to constitute a community of purpose and interest, and since taking the trip actually was the sole object or purpose of the parties, and since the parties had different purposes in going to Seattle, I am unable to reconcile the holding of the majority with the holding in the *Rosenstrom* case. It seems to me that the majority, in differentiating between the two cases, has attempted to establish a distinction without a difference.

For the reasons given, I dissent.

JEFFERS, J., concurs with SIMPSON, J.

STEINERT, J. (dissenting)—I concur in the views expressed by Judge Simpson, but will add, further, that, in my opinion, the fourth element necessary to constitute a joint venture is lacking, namely, that of an equal right to a voice in the performance of the undertaking and an equal right of control over the agencies used in the performance. The facts in this case, as I view them, do not support an inference that respondent had any *right* of control over the automobile used on the trip, or that it was within the contemplation of the parties that any such right was conferred upon him. The inferences, I think, are to the contrary.

ROBINSON, C. J. (dissenting)—I am in accord with the views expressed by Judges Simpson and Steinert. I had supposed that even hosts and guests have a common purpose "to transport themselves from one place to another," and that some common purpose of a different character and of a more substantial nature was necessary to constitute a joint adventure.

This court, in dealing with the doctrine of joint adventure during the last decade, has relied more

strongly upon the opinion in the *Rosenstrom* case than any other. See Shepard's Washington Citations re 154 Wash. 57. In my opinion, the majority opinion warps at least two of the rules laid down in that case to such an extent as to deprive them of all force and vitality.

I had hoped and believed also that some points at least had been settled by the exhaustive review of our previous decisions made in the opinion in the case of *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043. The position taken by the majority in the instant case has convinced me that I was mistaken about that. As I now see it, we have no settled rules of law concerning the doctrine of joint adventure upon which trial judges and members of the bar can place any dependence, save—perhaps—that the status or relation must be founded in contract, and even that rule is subject to interpretation. Does it mean a contract in the legal sense of the term? In the opinion in *Carboneau v. Peterson,* we said very definitely that it did. But a litigant who did nothing more than enter into a mere informal understanding with a friend to accompany him on a picnic or on a fishing trip can cite an imposing array of our decisions to the point that he thereby entered into a joint adventure.

Furthermore, intermingled with our decisions holding that a contract is the *sine qua non* of a joint adventure, and that parties thereto must enter into mutually binding obligations, are several others holding that minors may become parties to a joint adventure with adults and even with each other. In *Bates v. Tirk,* 177 Wash. 286, 31 P. (2d) 525, for example, all the persons who were held to be joint adventurers and to have jointly adventured to a football game together were minors. Apparently, counsel for respondent did not raise the question as to how minors could enter into mutually binding obligations. I do not venture to

speculate as to what the holding might have been had they done so, or to predict what position the court will take when a like question is actually presented for decision.

It may be that in the long run it will prove fortunate that it has become so perfectly apparent that the attempt to escape the prohibition of the host and guest statute by a broad and indefinable conception of joint adventure, has resulted in utter confusion. It may drive the court to the more solid ground suggested at the beginning of Judge Simpson's dissenting opinion and induce it to hold that a joint adventure is an association of two or more persons *to carry out a single business enterprise for profit*. The rule of *stare decisis* can scarcely be thought to compel the court to perpetuate the confusion which now exists.