[No. 28913. *En Banc.* December 3, 1943.]

LO RAYNE POUTRE, *Respondent,* v. GEORGE SAUNDERS et al., *Appellants.*[1]

[1]Reported in 143 P. (2d) 554.

*Williams & Cooney,* for appellants.

*Norman Trezona* and *Robertson & Smith,* for respondent.

MALLERY, J.—Defendants appeal from a judgment against them for personal injuries and property damage arising out of an automobile accident.

It should be stated at the outset that this case will be considered and determined on the theory presented by the pleadings and the trial court's instructions, which were that respondent must necessarily have been either (1) engaged in a joint adventure with appellant or (2) an invited guest or licensee in appellant's automobile, without payment for transportation; and, in order to recover, respondent must prove that she came within the former category.

There is involved on this appeal, the question of whether a *prima facie* case of joint adventure was established between the driver and an occupant of an automobile.

At the time of the accident, appellants, George Saunders and Rosemary Saunders, husband and wife, resided in Spokane. Both were employed, Mrs. Saunders in a stenographic position in Spokane, and Mr. Saunders with a freight company at Wallace, Idaho. Whenever possible on weekends, Mr. Saunders came to Spokane to be with his wife and child, and on occasions when he did not come to Spokane Mrs. Saunders would drive to Wallace on the weekend. Respondent, Lo Rayne Poutre, resided in Spokane, and her friend, Archie Hulsizer, who was a friend of Mr. Saunders, resided and was employed at Wallace, Idaho. Miss Poutre occasionally went to Wallace to visit Mr. Hulsizer.

On the Wednesday before the accident, Mr. Hulsizer learned from Mr. Saunders that Mrs. Saunders would probably drive to Wallace that weekend for a visit. Mr. Hulsizer wrote Miss Poutre advising her that she might be able to get a ride with Mrs. Saunders. This letter was received by Miss Poutre Wednesday evening. These two women were not acquainted. On that evening, Miss Poutre telephoned Mrs. Saunders, introduced herself, and explained about the receipt of the letter from Mr. Hulsizer and asked Mrs. Saunders whether she, Miss Poutre, might ride with her on the trip to and from Wallace if Mrs. Saunders made the trip that weekend. According to Miss Poutre, Mrs.

Saunders stated that she would be glad to have company. Thereupon, Miss Poutre said, "I will pay my share of the expenses," and Mrs. Saunders said, "That's fine," but that she (Mrs. Saunders) might be obligated to work on Saturday, in which event she would not go to Wallace, but that she would phone Miss Poutre Friday night.

Mrs. Saunders, on Friday night, advised Miss Poutre by telephone that she was intending to make the trip, and it was arranged between the two women that Mrs. Saunders would pick up Miss Poutre at a certain store in Spokane at one o'clock Saturday afternoon, which she did. On the way out of Spokane, Mrs. Saunders stopped at a service station and bought one dollar's worth of gasoline, for which she paid. Miss Poutre then again offered to pay part of the expenses when she knew the amount, and Mrs. Saunders said, "That's fine," or "that will be fine." When the two reached Wallace, Miss Poutre was let out at the boarding house of Mr. Hulsizer and Mrs. Saunders continued on to meet her husband. The two women did not meet again while in Wallace and neither concerned herself while there with the purpose or interest of the other.

The two women met at an appointed place Sunday evening and Miss Poutre again entered the automobile and the two started on the return trip, during which the accident occurred, resulting in the injury of Miss Poutre.

The most that can be contended for these facts is that the parties made an informal contract for transportation, the consideration for which was left indefinite.

Assuming for the moment that there was an enforcible contract that was not invalid for want of certainty, and remembering that the case was not tried on the theory that there was a transportation for hire but that it was joint adventure, the question that presents itself is: Can a contract for transportation for hire constitute a case of joint adventure?

We are confronted at once with this difference, that in joint adventure the principle of imputed negligence applies, while in a case of paid transportation it does not. The effect of which is that, in a joint adventure case the occupant

of the automobile is liable to an injured third party by imputing to him the negligence of his driver, or, in case he sues a negligent third party, his recovery is defeated by having the contributory negligence of his driver imputed to him. In a paid transportation case, he is not liable to an injured third party, by imputation, for the negligence of the driver, nor can his recovery from a negligent third party be defeated by imputing to him the contributory negligence of the driver. *Lewis v. Bertero,* 194 Wash. 186, 77 P. (2d) 786.

To be held liable for injuries to others caused by one's own negligence is no more fundamentally just than is the right not to be held liable for the injuries caused by the negligence of persons not under one's control or with whom one has no connection. The maxims of the common law are *respondeat superior* and *qui facit per alium facit per se,* both of which are founded upon the principle that a duty rests upon every man, in the management of his own affairs, whether by himself or by his *agents* or *servants,* so to conduct them as not to injure another, and that, if he does not do so and another is thereby injured, he shall answer for the damage. 21 R. C. L. 845.

The negligence of the agent is imputed to the principal, because he has the right to control the acts of the agent. It is the existence of the right of control, not its exercise, that is decisive. Indeed, where it can be said that there is no right of control, it follows that there is no agency. Thus where one buys only the results of labor, and the right to control the manner of its performance does not exist, either *as a matter of fact or as a matter of law,* the relationship is that of independent contractor and not that of principal and agent. The right of control, therefore, must exist as a matter of fact or law if the principle of imputed negligence is to apply.

The law of partnership is a branch of the law of agency; accordingly, the liability of one partner for the acts of his copartners is founded upon the principles of agency. 20 R. C. L. 882.

Once a partnership is found to exist, it is conclusively presumed, as a matter of law, that each partner is the

agent of the other and therefore that each is the principal of the other with the concomitant right to control the other's acts. This constitutes the basis for applying the principle of imputed negligence to partnerships in tort actions.

■ Joint adventurers, being governed by the law of partnerships, are each the agent, and by the same token the principal, of the others. Each, therefore, having the right of control over the others, *as a matter of law* imputed negligence may be invoked against joint venturers.

■ For a third party to invoke the doctrine of imputed negligence, or imputed contributory negligence as the case may be, in an automobile accident case, it is necessary for him to show no more than that a right of control over the driver existed in the occupant of the automobile, *as a matter of law*. For it to exist *as a matter of fact,* however, it must be specifically found in the terms of a valid contract between the driver and the occupant. Such would be the case, for instance, if the driver were the occupant's private chauffeur. Failing to find such a contract specifically giving the right of control, it would be necessary to show that the right existed *as a matter of law* based upon agency. One of the branches of agency that would so sustain it is joint adventure. Establishing the joint adventure is done in order to find the right of control *as a matter of law*.

The reason why the right of control cannot be found *as a matter of law* in a transportation for hire case and why transportation for hire, therefore, cannot constitute a joint adventure, will be further discussed in commenting upon the case of *Manos v. James,* 7 Wn. (2d) 695, 110 P. (2d) 887, upon which respondent relies most strongly. Since it is directly in point, we must affirm the case at bar or overrule it. The facts in the *Manos* case were as follows:

The appellant and respondent were strangers who chanced to meet in Spokane. Each then learned that the other wanted to go to Seattle, appellant with his wife for a vacation and respondent to resume his work as a bartender in a Seattle tavern. They agreed to go together for the purpose of reducing their expenses, and each was to pay one-half of the cost of the food, gas, and oil consumed

on the trip. A divided court, in holding that this constituted a joint adventure, discussed each of the four tests thereof, to wit: (1) a contract, (2) a common purpose, (3) a community of interest, and (4) an equal right of control. These observations may be made concerning them: (1) A contract. That there was a contract will be admitted. However, it was a contract for transportation for hire. (2) and (3) Common purpose and community of interest. The majority opinion said: "The common purpose which the parties had in their undertaking was to transport themselves from one place to another." The community of interest was specifically stated to consist of (a) the mutual advantage in being carried to their common destination, (b) expeditiously, and (c) with a material saving of expense to each. Under the contract, the consideration (the payment of one-half of the expense) was for transportation, the *purpose* attributed to the contract was transportation as was also the *community of interest*. In short, the contract was for transportation and nothing else. (4) Equal right of control. The majority opinion states: "This element arises out of, and *may be inferred from,* the terms of the contract between the parties." (Italics ours.) It further states: "Customarily, joint adventurers entrust the task of operating the vehicle to one of their own number *as their agent."* (Italics ours.) Such a finding, by inference, is made *as a matter of law* rather than *as a matter of fact.*

Since it is impractical to operate a car by more than one person at a time, it follows that, when joint adventure is established, the driver must, *as a matter of law,* act as an agent. While he is in that capacity, the other joint adventurers are principals with the equal right of control by the means of directions which they have a right to enforce, by virtue of their contract, *as a matter of law.* Even in automobile cases, we have never departed from the basic law of agency that only he who controls or has the right to control shall be liable. The terms of the contract did not specifically provide that the driver must follow the directions of the other party as to the manner in which the car was to be operated. The right of control was therefore not

established *as a matter of fact*. The only alternative is that it must be found to exist *as a matter of law*. This latter right cannot be found prior to the time the existence of a joint adventure is established. Otherwise the entire question is begged, since the right to control is the basic factor upon which liability under the law of agency is founded. It is to find that factor that all the other indicia of agency are marshalled and pointed in tort actions, and particularly in cases of joint adventure. For example: a train wrongfully kills a farmer's cow. The farmer sues a passenger on the theory of joint adventure. As in the *Manos* case, he proves: (1) contract for transportation, (2) and (3) the common purpose and community of interest were the economical and expeditious transportation, (4) the right of control is inferred. This results in making the passenger liable under the *Manos* case.

The right of control can be inferred *as a matter of law* only when a relationship has been established in which it is conclusively presumed to exist by the law of agency.

██  A joint undertaking of a business nature, for material gain or profit, is such a partnership, even though limited to a single transaction, as by the law of agency, establishes the right of control. This would constitute a joint adventure *as a matter of law*. No other kind of joint undertaking gives rise to such a presumption. We do not mean to say that the right of control cannot exist in a non-business undertaking, but it does not exist *as a matter of law* based on partnership and must be proved to exist, if at all, *as a matter of fact*. This can only be done by proving a contract which by its terms specifically provides for the right of control. It will never be inferred from circumstances extrinsic of the contract.

██  In a transportation for hire case, the driver is liable for a negligent injury to the occupant, but the occupant is not liable to third parties under the principle of imputed negligence. Because imputed negligence is found in one and not the other, the conflict between a joint adventure and a case of transportation for hire is irreconcilable. The common purpose and community of interest in a joint

adventure must be found in something beyond the transportation itself. Accordingly, *Manos v. James, supra,* is overruled.

The judgment is reversed.

BEALS, BLAKE, ROBINSON, and GRADY, JJ., concur.

MILLARD, J. (concurring)—The judgment should be reversed with direction to dismiss the action.

GRADY, J. (concurring)—I have signed the opinion, as written by Judge Mallery, but I think the lower court should be instructed to grant the respondent a new trial. I base this upon the action we took in *Bradley v. Savidge, Inc.,* 13 Wn. (2d) 28, 123 P. (2d) 780, by supplemental order. Because of our previous decisions, the respondent brought, and tried, her action upon the theory that she and Mrs. Saunders were joint adventurers. Now, that we have decided that the facts tend to show a relationship of private carrier and passenger, the respondent should be accorded the right to amend her complaint, if she deems this necessary, and present her case upon a theory other than that of a joint adventurer.

BEALS, BLAKE, and MALLERY, JJ., concur with GRADY, J.

STEINERT, J. (concurring specially)—Upon the facts shown by the record, I concur in the reversal of the judgment, and, further, I think that the order of reversal should be accompanied with direction to the trial court to dismiss the action.

However, I am not in complete accord with the reasoning of the majority opinion nor with some of the analogies stated therein.

Particularly do I disagree with the distinction made in the opinion between business and non-business transactions in so far as the element of "right of control" is concerned. The majority hold that, in business ventures, for material gain or benefit, the element of "right of control" is presumed *as a matter of law,* while in non-business ventures the question of right of control is not only one of fact,

but can be established only "by proving a contract which by its terms specifically provides for the right of control." In my opinion, a joint venture, while contractual in nature, may exist even though no material "gain or profit," in the commercial sense, is involved in the particular transaction. Our own reports are full of such illustrations. Indeed, if material gain or profit were a controlling factor, it would never have been necessary to evolve the theory of joint venture, for the ordinary rules of partnership and agency would have been sufficient to establish a ground of liability in transactions of a business character.

To require, as the majority opinion requires, proof of a *specific* contract with reference to right of control will, I think, distort the entire theory of joint venture as enunciated in a long series of our cases beginning with *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, and extending through *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043.

Moreover, it must be apparent, from a practical view of the matter, that no "specific" contract, such as the majority opinion suggests, will ever be made between parties contemplating a joint venture. The result of that opinion then is simply that a joint venture can rest only in business transactions. With that conception I do not agree.

SIMPSON, C. J., and JEFFERS, J., concur with STEINERT, J.

January 13, 1944. Petition for rehearing denied.