Hillsborough, }
Feb. 7, 1933. }

EMERY NOEL *v.* AIMÉ LAPOINTE.

WILFRED CHAMBERLAND *v.* SAME.

ALFRED R. McCUTCHEON *v.* SAME.

MARCEL THIBODEAU, *Adm'r v.* SAME.

*Robert E. Earley,* for Emery Noel and Wilfred Chamberland, furnished no brief.

*Thomas J. Leonard,* for Alfred R. McCutcheon, furnished no brief.

*Albert Terrien* and *Crawford D. Hening* (by brief and orally), for Marcel Thibodeau, Adm'r.

*Wyman, Starr, Booth & Wadleigh* (*Mr. Wyman* and *Mr. Ralph E. Langdell* orally), for the defendant.

MARBLE, J.  At about three o'clock on the afternoon of the accident the defendant invited the plaintiffs to ride with him.  His car was a Ford runabout with rumble seat.  All had attended a dinner at Nashua given by a club of which they were members.  The defendant had brought liquor to the dinner and had drunk some of it.  He stated that he was perfectly sober, however, and others testified to the same effect.  Although there was liquor in the car, Noel, Chamberland, McCutcheon and the defendant all testified that no liquor was consumed during the ride.

The accident occurred when the defendant, driving south on Mammoth road, accelerated speed to fifty or sixty miles an hour in order to pass a car driven by one Johnson.  Just beyond this point the road curved sharply.  Here the defendant's car, running along the shoulder of the macadam, struck loose gravel, skidded and crashed into a stone wall, causing the injuries for which these actions are brought.

The defendant makes no claim that the evidence does not warrant a finding of negligence on his part, but contends "that this court should hold as a matter of law upon this record that these plaintiffs were on a joint enterprise and were negligent both with respect to entering upon the ride and also with respect to their participation in it without protest at and prior to the time of the accident."

The parties were not engaged in a joint enterprise within the technical meaning of that term.  *Bowley* v. *Duca,* 80 N. H. 548, 549; *Clark* v. *Hampton,* 83 N. H. 524, 530; *Vidal* v. *Errol, ante* 1; 5-6 Huddy, Automobile Law (9th *ed.*), *pp.* 287-289, and cases cited.

"By the decided weight of authority two elements must appear in order to constitute a joint enterprise.  There must be both (1) a community of interest in the object of the trip and (2) a mutual right in the occupants to direct each other in relation to the management of the vehicle.  The circumstances must be such that it can be said that the vehicle is in their common possession."  16 Cornell Law Quarterly, 325.

The fact that the plaintiffs in the present case may have contributed to pay for the gasoline used upon the ride is unimportant: the defendant still retained "his rights and obligations as owner of his car." *Coleman* v. *Bent*, 100 Conn. 527, 532.

Since there was evidence that the defendant was not under the influence of liquor and no evidence that he was not a competent driver, the plaintiffs cannot be held negligent as a matter of law for accepting the invitation to ride. *Roberts* v. *Lisbon*, 84 N. H. 266, 269, 270. They rode for about two hours "on the country roads, up in Londonderry and around Derry" at a comparatively low rate of speed and without mishap. During those two hours, so far as the evidence discloses, the defendant drove with skill and care. The plaintiff Noel testified that there had been no occasion for cautioning him up to the time he started to pass the Johnson car, and that it was then too late to do so. According to Johnson's testimony, "it all happened in a very few seconds." There were differing opinions concerning the speed of the defendant's car and the cause of the accident. The plaintiff Chamberland expressed the belief that the defendant, after passing Johnson, "got back too much on his right-hand side" and "too quick."

Just what the true situation was and what the plaintiffs should have done in that situation were peculiarly questions of fact for the jury. Certainly the failure of the plaintiffs to protest during the short time required to overtake the Johnson car did not conclusively establish their negligence. Under the circumstances, "Reasonable men might conclude that it was the part of prudence . . . not to interfere" (*Collins* v. *Hustis*, 79 N. H. 446, 449), since a "multitude of counsel" would only "make the situation worse" (35 Harv. Law Rev. 121). The exception to the denial of the defendant's motion for a directed verdict is accordingly overruled.

Six of the eight requests for instructions deal with the obligation of the plaintiffs to exercise care. The first request, apart from the context of the opinion from which it was apparently taken, would not be comprehensible to the ordinary juror. All the requests were sufficiently covered by the charge.

The court was also requested to instruct the jury as follows: "While the burden is on the defendant to prove contributory negligence on the part of the passengers in the car, proof of contributory negligence may be found in the testimony of the plaintiffs or their witnesses, and you are not limited to the testimony of defendant or his witnesses, for such proof." The court charged the jury that in determining

whether or not the burden of proof had been maintained, they were to weigh all the evidence and to consider all they had seen or heard at the trial. This was a sufficient compliance with the request, and was in accord with a like statement made by defendant's counsel in his opening.

Finally, the defendant asked for an instruction that the jury "carefully consider" the speed at which he approached the curve (if found to be sixty miles an hour) as tending to prove that he was intoxicated —and this, despite his own assertion that he was perfectly sober. Ordinarily a party may not ask a jury to find that he has not told the truth. *Harlow* v. *Leclair*, 82 N. H. 506, 511; *Saidel* v. *Society*, 84 N. H. 232, 233; *Merritt* v. *Merritt*, 85 N. H. 210, 212; *Morris* v. *Railroad*, 85 N. H. 265, 269, 276. But even if the defendant here were permitted to impeach his own testimony in this manner (the defence being in fact conducted by an insurance company), the request was properly refused because the court was asked to stress a selected portion of the evidence rather than to state a principle of law. *Watkins* v. *Railroad*, 84 N. H. 124, 133, and cases cited.

The representative of a liability insurance company testified at the trial, and defendant's counsel argued to the jury that the defendant was under the influence of liquor when the accident happened. In the course of his argument to the jury, counsel for one of the plaintiffs said: "The defendant, himself, mark you, the client of my over-clever friends here, denies the coat of tar which they would gladly besmirch him with. Why this disagreement between counsel and client? It makes one almost suspicious that they are the defendant's counsel only on the surface, while underneath—and I use that advisedly, because they are certainly underneath here somewhere—they are hostile to him. It is a queer situation and the first such that I have ever seen."

The defendant excepted, whereupon counsel withdrew "any word used." Then, upon the suggestion of the court that the withdrawal should be more explicit, he said: "Whatever they are excepting to I withdraw, I will withdraw that, 'The first such that I have ever seen'." The court then directed the jury to "pay no attention to it."

Since no further objection was made, court and counsel might well conclude that the objectionable statement had been withdrawn, and the defendant cannot now be heard to say that his real objection was to the implication that an insurance company was defending the case.

So far as the other alleged improprieties in argument are concerned, counsel merely asked the jury to draw inferences which might fairly

be drawn from the evidence or from the manner in which the defence had been conducted. But in any event the exceptions are unavailing, for in no instance does it appear that exception was taken to the ruling of the court. *Tuttle* v. *Dodge*, 80 N. H. 304, 312. This was essential, and could not be obviated by the formal allowance of the exceptions after trial.

No error is discovered in the cross-examination of the insurance company's representative. The latitude permissible in cross-examination extends ordinarily to any matter which tends to discredit the opposing party's claim. *Masterson* v. *Railway*, 83 N. H. 190, 195.

The order in each case is

*Judgment on the verdict.*

All concurred.