On account of the insufficiency of the evidence to meet the requirements of the law, this judgment is reversed and the cause remanded.

---

### GRAHAM v. DALLAS RY. & TERMINAL CO.

#### No. 13218.

Court of Civil Appeals of Texas. Dallas.

Oct. 16, 1942.

Rehearing Denied Nov. 13, 1942.

Milton K. Norton and Chaney, DeShazo & Hyde, all of Dallas, for appellant.

Burford, Ryburn, Hincks & Charlton, of Dallas, for appellee.

YOUNG, Justice.

The Court, on its own motion, withdraws its former opinion herein, of date June 26, 1942, and in lieu thereof substitutes the following as our opinion in this case; the judgment heretofore rendered in the matter of reversal and remand not being disturbed; and subject to motions for rehearing, as before:

Plaintiff's suit for personal injuries in the trial court resulted in a defendant's judgment upon jury issues; and appellant's major contention here is that aforesaid jury verdict was favorable to her in amount of $2,572, and, if mistaken in this, that certain material answers were conflicting and irreconcilable, for which reason, the court erred in refusing to declare a mistrial.

Before detailing the jury findings as a whole, the surrounding facts to the occurrence should be described. Plaintiff had just alighted from a street car on which she had been a passenger, when she was struck by another of defendant's cars moving in the opposite direction on parallel tracks. The situs was near the intersection of Hillcrest and Asbury, University Park, defendant maintaining a double track system from the City of Dallas north to this point, where a switch is located; the line narrowing to a single track for two blocks farther north to its end. Defendant's trackage is located along the west side of Southern Methodist University grounds, being between the campus and Hillcrest Avenue, a principal street of that section, running north and south. Outbound passenger cars, or those proceeding northwardly to the end of the line, used the west track, while inbound cars running south to Dallas operated on the east track. Near Hillcrest and just south of Asbury, defendant maintains a graveled section between the tracks for purpose of receiving and discharging passengers, a space some 8½ ft. wide and 57 ft. in length; and in event an outbound car should reach this point while an inbound car was on the single track to the north of Asbury, it must necessarily wait until the opposite car moved down past the switch and onto the east line of tracks. Likewise, defendant's outbound cars discharged and received patrons from the right, adjacent to this loading zone; and there is testimony (1) that passengers alighting here would continue across the east tracks to the University grounds, and (2) that the operator of an inbound car ordinarily stopped to the north of Asbury until the car facing it had fully unloaded and the zone cleared (Mr. Pou, the inbound motorman, testifying that from his view of the opposite car, he had concluded such to

be the case on this occasion). A wooden trolley pole some 12 inches in diameter stood about the midway center of this loading zone.

Just prior to the accident in question, the outbound car had discharged its passengers from the right front exit to the platform, and the motorman in charge had closed the door, awaiting an inbound car to clear the single track from the end of the line and take the east of these double tracks. The rear door of the outbound car was also closed, but susceptible of reopening by means of a foot treadle; and plaintiff, thus opening the door, was hit by the passing inbound car just after she had stepped from said doorway to the loading zone; it being contended that aforesaid trolley pole to the left of plaintiff as she debarked, materially obscured her view of the approaching car.

In view of the points presented on this appeal, the jury issues and answers must be quoted, viz.: "Issue 1: Do you find from a preponderance of the evidence that the defendant failed to provide a safe and sure footing for its passengers after alighting from said street car at the place where the plaintiff alighted from said street car on the occasion in question? Answer: No. (Issues 2 and 3 not answered) Issue 4: Do you find from a preponderance of the evidence that the defendant's motorman in charge of defendant's street car which came in contact with the plaintiff on the occasion in question failed to wait until all passengers, which had been discharged from the northbound street car on the occasion in question had moved from the tracks of the defendant to a place of safety before moving said southbound street car by the place where passengers had been discharged by the northbound street car? Answer: Yes. Issue 5: Do you find from a preponderance of the evidence that such failure, if any you have found in answer to special issue No. 4, was negligence as that term is herein defined? Answer: Yes. Issue 6: Do you find from a preponderance of the evidence that such negligence, if any you have found in answer to special issue No. 5, was a proximate cause of the collision between the plaintiff and the street car? Answer: Yes. Issue 7: Do you find from a preponderance of the evidence that the rate of speed at which defendant's motorman was driving said street car immediately prior to and at the time it collided with the plaintiff was negligence, as that term is herein defined? Answer: Yes. Issue 8: Do you find from a preponderance of the evidence that such negligence, if any you have found in answer to special issue No. 7, was a proximate cause of the collision between the plaintiff and the street car, as the term 'proximate cause' is defined herein? Answer: Yes. Issue 9: Do you find from a preponderance of the evidence that defendant's agents, servants and employees at the time and place and on the occasion in question failed to keep a proper lookout for plaintiff, as the term 'proper lookout' is defined below? Answer: Yes. Issue 10: Do you find from a preponderance of the evidence that such failure on the part of defendant's agents, servants and employees, if any you have found in answer to special issue 9, was negligence, as that term is herein defined? Answer: Yes. Issue 11: Do you find from a preponderance of the evidence that such negligence, if any you have found in answer to special issue No. 10, was a proximate cause, as that term is herein defined, of the collision between the plaintiff and the street car? Answer: Yes. Issue 12: Do you find from a preponderance of the evidence that the agent, servant or employee of the defendant on the occasion in question failed to sound the gong on said street car? Answer: No. (Issues 13 and 14 not answered) Issue 15: Do you find from a preponderance of the evidence that the plaintiff failed to exercise ordinary care for her own safety, as the term ordinary care is defined herein, in not standing out of reach of the southbound street car until it had passed? Answer: No. (Issue 16 not answered) Issue 17: Do you find from a preponderance of the evidence that the plaintiff, after she had alighted from the northbound street car, moved to the place where she was struck by the southbound street car without first ascertaining that the southbound street car was approaching? Answer: Yes. Issue 18: Do you find from a preponderance of the evidence that the plaintiff, by moving from the place where she alighted from the northbound street car to the place where she came in contact with the southbound street car without first ascertaining the southbound street car was approaching, if you have so found, failed to exercise ordinary care for her own safety, as that term is herein defined? Answer: Yes. Issue 19: Do you find from a preponder-

ance of the evidence that the plaintiff's failure to exercise ordinary care in the respect inquired about in special issue No. 18, if you have so found, proximately caused or contributed to cause, as that term is herein defined, the collision between the plaintiff and the street car? Answer: Yes. Issue 20: Do you find from a preponderance of the evidence that the plaintiff failed to keep a proper lookout for the southbound street car prior to the collision involved? Answer: No. (Issues 21, 22 and 23 not answered) Issue 24: Do you find from a preponderance of the evidence that the collision between the street car and the plaintiff was not the result of an unavoidable accident? * * * Answer: It was not the result of an unavoidable accident. Issue 25: What sum of money, if any, paid now in cash, do you find from a preponderance of the evidence will reasonably compensate the plaintiff for the injuries, if any, sustained by her on the occasion in question as a direct and proximate result of the negligence, if any, of the defendant? * * * Answer: $2,572.00."

It will be observed that defendant would be entitled to judgment under above findings, unless Issues 17, 18 and 19 be disregarded; and this, appellant strenuously insists, the trial court should have done. Accordingly, appellant, in motion for judgment non obstante veredicto (overruled by the court), argues that the findings just mentioned were either (1) immaterial as imposing upon her a standard of care not required by law, or (2) were in direct conflict with other and similar issues involving plaintiff's conduct and movements, and that a mistrial should have been declared. These points are generally reiterated in appellant's eight propositions of error complaining of the judgment under review.

Was jury question No. 17 (above) a proper one, bearing in mind plaintiff's general duty on the particular occasion, to exercise ordinary care for her own safety? The parties (both plaintiff and defendant) have opposite theories on the propriety of aforesaid issue; each based, we might add, on competent testimony. It is appellant's position that her injuries occurred whilst she was in process of alighting on a platform provided by defendant, but alongside another track; that, considering the carrier's duty to furnish a place for passengers to alight in safety, she was not required to do more than keep a proper lookout for approaching cars; and was, in no sense, duty bound to actually discover the presence of such other car in the situation thus presented; citing the following statement from 13 C.J.S., Carriers, § 784, pp. 1558–1559: "However, a passenger who is in the act of going to or leaving the train or car at a place where there is an express or implied invitation for him so to do, as where it is necessary for him to cross the tracks, may assume that the railroad company will so operate its other trains, or otherwise perform its duty, as not to put him in peril, and he is not under the same obligation to look out for his own safety by looking and listening as is incumbent in general on a person who approaches a railroad track with intent to cross it. In case the circumstances are such that a person crossing a track at a station is not bound to look for trains, the fact that he does look but does not look effectually so as to see an approaching train does not of itself make him guilty of contributory negligence."

 On the other hand, it was the testimony of defendant's outbound motorman that when he stopped at Asbury, the other car was at the end of the line, two blocks north; that he unloaded passengers at the front end and closed the car door; that both doors were closed as the opposite car approached; and that plaintiff opened the rear door by means of the treadle when motorman Pou, going south, was halfway past the standing vehicle. Mr. Pou testified that two or three minutes elapsed before he moved down from the end of the line to Asbury; that as he came up, he saw no sign of anyone getting off the front or back end of the standing car; stating further facts from which it could reasonably have appeared to him that all passengers had alighted from the outbound car and the loading zone cleared before he proceeded south on the inbound track. Plaintiff testified to a familiarity with the defendant's operation of cars at the point, as well as with the described loading zone and tracks; having ridden to and from the location for many years. We conclude that the further defensive testimony of her delayed and hurried manner of exit from car to platform made proper the issue complained of; the jury simply having determined that plaintiff's own omission (failure to discover the presence of such other car before stepping onto the adjacent track) constituted, under the particular facts and circumstances, a want of ordinary care. This was no more

than a fact inquiry consistent with defendant's theory of the accident, and, as above shown, was based on competent testimony. The jury were not instructed that it was plaintiff's duty to discover the approaching car, but were simply asked to find as a matter of fact, whether such omission on her part was a "failure to exercise that care which a person of ordinary prudence would have exercised under the same or similar circumstances."

Appellant urges (1) that given issues on proper lookout, comprehended her full duty relative to the exercise of ordinary care for her own safety, and (2) that, as an alighting passenger and ignorant of the approaching street car, she was not required to anticipate its negligent operation by defendant; hence no contributory negligence, such as involved in issue 17, could be charged against her. Appellant may be correct from her own concept of the material facts; but defendant's right to present specific defensive issues raised by testimony is unquestioned; and, in view of plaintiff's general knowledge of the situation and the movement of cars on such other track, we do not think that inclusion of issue 17 in the court's charge was error.

Another fact element, however, is present in the issue under discussion (No. 17), in conflict with fact Issue 15, the result being that the jury answers involving plaintiff's own movements (whether negligent or not) are destructive of each other. Specifically stated, Issue 17 finds that because of the approaching car (a fact plaintiff did not ascertain), she was negligent in moving to the place of the collision; whereas, in Issue 15, involving the same movement, that she was exercising ordinary care in not standing out of reach of the street car until it had passed. In other words, plaintiff's ignorance of the approaching car, as well as her position on the platform, being elements common to both issues, the jury has simply given opposite answers concerning the effect of her moving to the place where she was struck; holding in one issue (18) that such movement constituted contributory negligence, and in the other (No. 15) that it did not. "The conflict in findings that destroys the verdict is that irreconcilable difference of finding with respect to an indispensable fact in issue in the case where both findings cannot be true, but one or the other must of necessity be false." 41 T.J., p. 1226, par. 361.

It follows, on grounds which we have here briefly, but we believe sufficiently, pointed out, a mistrial should have been declared on the jury answers as a whole. The court therefore erred in rendering the judgment under review; with the result that this cause must be reversed and remanded for a new trial.

Reversed and remanded.