**TEXAS PRUDENTIAL INS. CO. v.
KNIGHTEN.**

No. 14676.

Court of Civil Appeals of Texas.
Fort Worth.

March 30, 1945.

Cantey, Hanger, McMahon, McKnight &
Johnson, of Fort Worth, for appellant.

Todd, Crowley & Gambill, of Fort
Worth, for appellee.

SPEER, Justice.

Appellee J. F. Knighten sued appellant
Texas Prudential Insurance Company to
recover on a policy issued by the insurance
company on the life of Oliver Letson who
died on November 8, 1943, as a result of
gunshot wounds.

The nature of the policy was such that
in case of death from any cause the bene-
ficiary should receive $138 and if death
resulted from bodily injuries, "solely
through external, violent and accidental
means," the company would pay double
death benefits, that is, the amount of the
face of the policy plus an equal amount
to that promised on account of death from
any cause. The policy contained an ex-
ception relating to accidental death, sub-
stantially in this language: "No accidental
death benefit will be paid if the death
of the insured resulted from * * * in-
juries intentionally inflicted upon the in-
sured by himself or any other person.
* * *"

The pleadings reveal that appellee had
made proof of death and that the company
admitted liability to the extent of $138,
the amount payable upon the death of in-
sured, and tendered payment of that
amount; it kept the tender good at all
times. The beneficiary rejected the $138
and claimed the double death benefit; when
the company declined payment as demand-
ed, suit was filed for the double death
benefit and for penalty and attorney's fees.

The insurance company specially pleaded
the provisions of the policy relating to
death from injuries intentionally inflicted
and alleged that the insured's death re-
sulted from injuries intentionally inflicted
by another party.

The court in his charge gave a definition
of the term "accidental means" and no
objection was urged thereto. By answer to
the first special issue the jury found from
a preponderance of the evidence that the
insured lost his life solely through external,
violent and accidental means. Special issue
No. 2 reads: "Do you find from a pre-
ponderance of the evidence that Oliver
Letson died of injuries intentionally in-
flicted upon him?" Answer: "No." By
3rd issue it was found that $100 was a
reasonable attorney's fee for plaintiff's
counsel in the case.

Judgment was entered for appellee for
$409.12 shown by the judgment to be made
up of $276, "being twice the face of the
policy involved," $33.12 being penalty of
12 per cent of the first mentioned amount
and for $100 attorney's fees found by the
jury verdict.

Appellant's motion for new trial was
overruled, to which action of the court
it excepted and perfected this appeal.

Two points of error are presented and relied upon for reversal. In substance they are: (1) The court should have given appellant's requested peremptory instruction, and (2) court should have sustained its motion for judgment non obstante veredicto. The reasons assigned for the points are because there was no evidence that insured did not die from injuries intentionally inflicted and because the evidence shows conclusively that insured died as a result of injuries intentionally inflicted upon him by another person.

The transcript does not show that any peremptory instruction for verdict was requested by appellant nor acted upon by the court; but insofar as this appeal is concerned we think appellant properly presents the same matter in its complaint of the overruling of its motion for judgment notwithstanding the verdict.

Appellant frankly says in its brief that: "The only point which is raised by this appeal is whether the deceased Oliver Letson was killed as a result of injuries intentionally inflicted upon him by some other person, towit, R. C. Morris."

The record does not disclose that appellant made any objection to the issues of fact being submitted to the jury, nor to the manner in which they were submitted. We have already seen that the jury found that the insured lost his life, solely through external, violent and accidental means and that he did not die from injuries intentionally inflicted upon him.

■ This appeal resolves itself into the one question: Was the evidence of sufficient probative force to support the jury verdict? The generally accepted rule is: "If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex.Jur. p. 910, sec. 410, and cases cited in footnote. This rule has many times been followed by the courts since the publication of the above text.

Under the above announced rule we need only to mention some parts of the testimony of Mrs. Letson, the only eyewitness offered, whose testimony the jury had the right to pass upon in reaching their verdict. At the time of the death of the insured he and his wife were at their home in the after-

noon. Mrs. Letson (wife of insured) had previously been married to R. C. Morris (the man who killed the insured). They had been divorced and both had remarried. During the time Mrs. Letson was the wife of Morris he had threatened several times to kill her and had shot at her once. She had heard of his subsequent threats against her after she was married to Letson. On the afternoon of the killing Morris came to the home of the Letsons; Mrs. Letson met him at the west door of the house and he asked if his son was there, and while making this inquiry he had his right hand in his overcoat pocket and Mrs. Letson at that time saw his pistol; she closed the door quickly and ran to the back door to close and lock it. Morris ran from the west door where he had seen her to the back door which she had locked and could see through a window that she was running out of that room; Morris fired two shots through the window in her direction and one bullet hit the door casing through which she passed. Morris then returned to the west door and Mr. Letson (insured) opened the door and fired three or four shots from his pistol, some of which struck Morris. Morris did not fall on being shot by Letson. Mrs. Letson was standing immediately behind Letson when he was shooting; Letson then closed the door; Mrs. Letson ran out of the room and Mr. Letson stepped back to where Mrs. Letson was standing when Morris last saw her. Morris then turned to a window a foot or two from the door and fired two shots through the window, one of which shots struck and killed Letson, while standing where Mrs. Letson stood when Morris saw her from the door. The window through which Morris shot had a curtain on it of sufficient density to prevent anyone from seeing through it into the house. There is no testimony in the record showing that Morris knew Letson was at his home when Morris went there. After Mrs. Letson saw that her husband was dead, she ran through another part of the house in which another family lived, and opened an outside door to go out and get help and there she was confronted with Morris who pointed his pistol at her and she jumped back and closed the door before he had time to shoot.

■ It is argued by appellant that Morris shot and killed Letson intentionally because Letson had shot and wounded Morris and therefore there was no double

death benefit under the policy of insurance. Upon the other hand, appellee argues that with Morris' previous threats to kill Mrs. Letson, his former wife, his previous attempt to execute that threat by shooting at her, and other violence he had inflicted upon her, his subsequent threats since she married Letson, his lack of knowledge that Letson was at the house before going there, his firing two shots at Mrs. Letson through the back room window, and his final shots through another window directly at the spot where he had last seen her, Morris was intending to kill Mrs. Letson and not Mr. Letson.

The jury accepted the theory of appellee and we cannot say that the evidence did not support the verdict. Applying the rule of law announced above, a jury question was raised by the evidence, and no instructed verdict should have been given for appellant, even if one had been requested. It follows that in this character case if no summary instruction for appellant would have been proper, there was no error in overruling its motion for judgment notwithstanding the verdict on that account.

Finding no error for which the judgment should be reversed, it is our order that it be affirmed.