URBAN and wife, Appellants, vs. CHARS and another, Respondents.

*September 12—October 8, 1957.*

For the appellants there was a brief by *Joseph H. Peters,* attorney, and *Bassuener, Humke, Poole & Axel* of counsel, all of Sheboygan, and oral argument by *Paul Axel.*

For the respondents there was a brief and oral argument by *D. J. Regan* of Milwaukee.

STEINLE, J.  Presented is the consideration of whether the trial court erred in concluding upon the basis of evidence most favorable to plaintiffs, that as a matter of law the plaintiffs were guests without payment for their transportation while riding in the Chars automobile when they were injured.  The question as to whether they were guests without payment is controlled by art. 6701b of the Texas statutes and the interpretation thereof by the courts of last resort of Texas.  The statute in question provides:

(19 Vernon's Texas Civil Statutes Annotated.)

"Art. 6701b.  LIABILITY FOR INJURIES TO GRATUITOUS GUEST IN MOTOR VEHICLE LIMITED; PUBLIC CARRIER AND MOTOR VEHICLE DEMONSTRATORS EXCEPTED. . . .

"Section 1.  No person transported over the public highways of this state by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death, or loss, in case of accident, unless such accident shall have been intentional on the part

of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."·

The evidence most favorable to plaintiffs concerning the issue, indicates as follows: The plaintiffs are the parents of Johanna Chars, wife of the defendant, Herbert Chars. At the time when plaintiffs were injured, they, together with Mr. and Mrs. Chars and the Chars children aged eleven, nine, and six years, respectively, were on an automobile trip from Wisconsin to California. Mr. and Mrs. Chars had been talking for approximately seven to eight years about taking this trip, but never actually decided upon it because they did not have the money. About three weeks before starting on the trip, Mr. and Mrs. Chars contacted the plaintiffs for the purpose of ascertaining whether they would go along. After receiving a favorable answer from the plaintiffs, coupled with an understanding that plaintiffs would pay for the gasoline, oil, and other automobile expense on the trip, Mr. and Mrs. Chars decided to make the trip. Had there been no agreement that plaintiffs would pay such expense, Chars and his family would not have made the trip. Mr. and Mrs. Chars desired to go to North Hollywood. They had been married there in 1943, and Mr. Chars had a sister there with whom they intended to visit. The plaintiffs wanted to see San Francisco. Their son, who had previously been stationed in military service there, had told them about it. Before starting the trip, the parties agreed upon the route, and also that they would go to both North Hollywood and San Francisco. They agreed to use the Chars car. It was also agreed that the men and Mrs. Chars would participate in the driving, and that deviation from the route chosen would be taken at the pleasure of anyone. As to meals, it was agreed that they would prepare some from purchases on the way, and have "some out." It was further agreed that they would each pay for their respective lodging and ·meals. Only Mr. and Mrs. Chars

participated in the driving from Milwaukee to Dalhart. On one occasion there was deviation from the route because the plaintiff, Felix Urban, wished to see a bridge that was not on their course. He alone of the party had an interest in that matter.

The day in question was a Sunday, and the party arrived at Dalhart, Texas, at about 8:30 a. m. after having already traveled about 100 miles that morning. They learned that they were too late for church services at Dalhart, and decided to move on to another place about 100 miles away where they would be able to attend church services. Herbert Chars was driving the car as they proceeded through Dalhart. In that city, Denver street intersects with Fifth street at right angles. The car was proceeding south on Denver street. A large sign located about 125 feet north of Fifth street on Denver street warned of dips in the road ahead and directed a speed limit of 10 miles per hour. Chars failed to notice the sign. He was driving at about 30 miles per hour. On each side of Fifth street there were dips, eight inches deep and five feet wide. The car traversed both dips. Chars did not reduce his speed before reaching the first dip, nor while traveling between the first and second dip. The car bounced while crossing the dips, and the plaintiffs were injured.

In their brief on this appeal, plaintiffs stated: "Neither of the plaintiffs, the defendant Chars, nor Mrs. Chars, had any business to attend to on the trip. It was a pleasure trip."

On this appeal, plaintiffs concede that the evidence does not establish a cause of action in gross negligence. The Texas statute affords no cause of action for damages to a nonpaying guest in an automobile unless the accident was intentional or was caused by gross negligence. There was no claim that the accident was intentional.

Leading cases in Texas treating with the statute in question are *Raub v. Rowe* (Tex. Civ. App. 1938), 119 S. W.

(2d) 190, and *McCarty v. Moss* (Tex. Civ. App. 1949), 225 S. W. (2d) 883. Both were decided by the court of appeals of Texas and the judgments were final. (As to finality of judgments of courts of civil appeals in Texas, see 21 C. J. S., Courts, p. 714, sec. 462.) In *Raub v. Rowe,* three ladies,— the plaintiff, the defendant, and another,—desired to make a trip to visit a relative who lived at Raymondville. They commenced the trip from Dallas. Previous to starting, the plaintiff, who did not have an automobile available for her transportation, contacted the defendant who agreed to furnish her automobile. The plaintiff and the other lady agreed to contribute their proportionate share of the expense for the purchase of gas and oil. The trial court sustained a demurrer to the petition and by judgment dismissed the action. On appeal, the judgment was sustained. The appellate court said (119 S. W. (2d) 192):

"The question which first arises is whether the plaintiff was a guest of the defendant riding in the latter's car without payment for such transportation within the purview of . . . article 6701b, Vernon's Texas Statutes, 1936. Whether the plaintiff, under the facts reflected by her pleading, is to be regarded as a gratuitous guest of the defendant has not been passed upon by the courts of this state so far as we are advised. Undoubtedly the plaintiff was such a guest unless it can be said the agreement on her part to pay the defendant the plaintiff's proportionate part of the cost of gas and oil for the operation of the car is to be regarded as constituting payment for plaintiff's transportation. The question has arisen in other states under statutes similar to our own statute, and it is quite generally held that an agreement on the part of the plaintiff to pay plaintiff's share of the operating expenses of an automobile in which the plaintiff is riding does not make the plaintiff a passenger for hire or compensation. [Citing cases.]"

In its opinion in *Raub v. Rowe, supra,* the court quoted with approval from two California cases which were cited at the foot of the quotation just above stated. The cases were

*Rogers v. Vreeland* (1936), 16 Cal. App. (2d) 364, 60 Pac. (2d) 585, and *McCann v. Hoffman* (1937), 9 Cal. (2d) 279, 70 Pac. (2d) 909. The quotation in *Raub v. Rowe* from *Rogers v. Vreeland* is as follows (119 S. W. (2d) 192):

" 'Running through the decisions in this state involving the "guest" statute is the element of material benefit to the defendant driver in the form of possible profits, where the elements of friendship and hospitality were not involved, and where the ride was taken as an integral part of a business transaction. . . .

" 'Doubtless the legislature intended to change the rule heretofore adopted in this state, that an invited guest could recover for simple negligence, and to provide that such a person could not recover in the absence of a showing of intoxication or wilful misconduct; and we are of the opinion that the section is applicable to a case such as the one now before us, where the riders, on a trip purely social, and without any commercial or business element, agreed to pay their share of the running expenses of the automobile and their share of any other expense on the trip. We do not consider such an arrangement between the riders and the driver as the giving by the former to the latter of such compensation as removes the riders from the status of "guest" within the meaning of the act.' "

The quotation from *McCann v. Hoffman* (9 Cal. (2d) 285, 286, 70 Pac. (2d) 912), as approved in *Raub v. Rowe* (119 S. W. (2d) 193), is as follows:

" 'The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtained under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which

will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. . . .

" 'Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure.' "

In *McCarty v. Moss* (Tex. Civ. App. 1949), 225 S. W. (2d) 883, the court expressed its accord with the principle as stated in *Raub v. Rowe, supra,* which had affirmed the above quotation from *McCann v. Hoffman, supra.*

Later cases concerning the subject in issue here are *Young v. Bynum* (Tex. Civ. App. 1953), 260 S. W. (2d) 696, and *McClain v. Carter* (Tex. Civ. App. 1955), 278 S. W. (2d) 877.

In *Young v. Bynum* it appears that Bynum's mother wished to visit her daughter in another city. Young suggested that they take her there. The trip was made in Young's car. Bynum furnished the oil for the trip and paid for the meals at a stop en route to their destination. On the return trip Bynum was injured when Young fell asleep at the wheel. Judgment was rendered in favor of Bynum in the trial court on the basis of ordinary negligence. The appellate court determined that Bynum was not a paying passenger, and reversed the judgment. The court said (260 S. W. (2d) 699):

"It is evident from appellee's testimony that there was no definite tangible benefit conferred on Young by Bynum's presence in the automobile that influenced Young to furnish Bynum's transportation; that Bynum was there to help his mother; that this was not a trip made for the joint benefit of Young and Bynum but taking Bynum's mother to Midland

was induced by a fine, friendly family relationship, where each was willing to contribute to the happiness and welfare of Bynum's mother; that what Mr. Bynum did was not for the purpose of earning his transportation but because of such relationship and the desire to care for his mother; that the situation was barren of any such definite, tangible benefit to Young as the statute contemplates in order to remove Bynum from the status of a guest."

In *McClain v. Carter, supra,* verdict was directed in favor of the defendant who occasionally picked up the plaintiff, a fellow employee, as a passenger and took him to work without prearrangement or notice. The rider occasionally, without agreement or request, contributed to the gasoline expense. The court said (278 S. W. (2d) 878):

"The most that is shown is that such payments were beneficial to appellee, which is obvious. In our view they did not change the appellant's status as a guest. They represent nothing more than a normal and natural expression of appreciation from a guest who repeatedly accepts the hospitality of another person."

In *Burnett v. Howell* (Tex. Civ. App. 1956), 294 S. W. (2d) 410, it appears that while the plaintiff and defendant were having coffee one morning, the defendant who owned an automobile indicated that he would go to a near-by town to see his girl if he had any gasoline. The plaintiff asked whether the defendant did not have any money, and the defendant replied that he was broke. The plaintiff said that he would buy gasoline for the defendant if he would take the plaintiff to said town in order that the plaintiff could attend to some business there. The defendant expressed a willingness to do so. Before starting, the plaintiff, in addition to filling up the tank with gasoline, gave the defendant a dollar. It was plaintiff's intention to use the defendant's car in attending to his business, while the plaintiff was visiting with his girl. The plaintiff was injured on the trip and

brought the action on the basis of ordinary negligence. The court found that he was a paying guest. It was said (294 S. W. (2d) 411):

"We think the case before us presents a different situation. The appellee, Howell, had expressed a desire to go to Andrews to see his girl, but he was not going because he did not have any gasoline and could not buy it. Appellant, who had no interest or desire in going with appellee to see his girl, seeing an opportunity to get a convenient ride to Andrews to attend to some business, told appellee he would buy the gas if appellee would take him to Andrews and bring him back. The proposition made by appellant to appellee was the inducing cause of the agreement to transport appellant to Andrews and back, and rather than a desire to show hospitality to appellant, it appears to us it was simply a business proposition on the part of both parties, and does not come within the guest statute. In the case of *Raub v. Rowe, supra,* the court realized that under a situation such as we have in this case that the guest statute would not apply. It quotes from *McCann v. Hoffman,* Cal. App., 62 Pac. (2d) 401, as follows:

" 'Relationships which will give rise to the status of passenger must confer a benefit of a tangible nature and are limited. . . . *Therefore, where a special tangible benefit to defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given.* But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on a trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure.'

"The tangible benefit to appellee was the tank of gas, which was the motivating influence for appellee to furnish appellant the transportation, not joint social purpose or reciprocal hospitality."

In the case at bar it is the position of the plaintiffs that the payment of the gasoline, oil, and other auto expense by

them constituted a tangible benefit moving to Mr. and Mrs. Chars, which actually was the motivating influence for their transportation. Plaintiffs also contend that the parties were engaged in a joint adventure, and that hence the statute is not applicable to them.

The principles enunciated in *Raub v. Rowe, supra,* and *McCarty v. Moss, supra,* were the law of Texas at the time in question. Thereunder, the sharing of automobile expense when a trip was taken for pleasure or social purposes, was nothing more than the exchange of social amenities. The evidence in the case here indicates beyond a doubt that the principal purpose of the trip was pleasure and sightseeing. Notwithstanding that in a sense there was some tangible benefit flowing to Chars from the payment by the plaintiffs of the expenses for oil, gas, etc., nevertheless it seems plain that such payment of expense was incidental, and did not constitute the moving influence for the transportation. As said in *McCann v. Hoffman, supra* (9 Cal. (2d) 286, 70 Pac. (2d) 913) : "The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure."

Plaintiffs submit that late California cases cited by them indicate departure from the strict rule laid down in *McCann v. Hoffman, supra,* and that in several of such cases the court approved submission of questions to the jury concerning compensation in matters of this kind. It does not appear that Texas has adopted such position. The public policy with reference to art. 6701b of its statutes appears to remain as indicated in the cases heretofore referred to. In *Cedziwoda v. Crane-Longley Funeral Chapel* (Tex. Sup. Ct. 1955), 283 S. W. (2d) 217, and *Rowan v. Allen* (Tex. Comm. App. 1940), 134 S. W. (2d) 1022, the courts respectively delineated the general purpose of the host-guest statute and also pointed to the spirit thereof as it pertained to situations

involving family relationships. In the *Cedziwoda Case* the court said (283 S. W. (2d) 218) :

"The purpose of article 6701b is to prevent fraudulent collusion between an insured and a guest."

In *Rowan v. Allen* the court said (134 S. W. (2d) 1024) :

"The evidence presents a familiar picture of a fine, friendly relationship between two families, each glad to contribute to the happiness and welfare of the other. We find in it no suggestion from which a legitimate inference could be drawn that such relationship was commercialized by the plaintiff's hiring out her daughter to the defendant in consideration of the latter's agreement to transport plaintiff to the races."

We are obliged to determine that the Texas authorities herein referred to are controlling, and that it must be held as a matter of law that the plaintiffs were guests without payment for their transportation.

The plaintiffs contend that they were engaged in a joint enterprise with the defendant Chars in making the trip. It appears that art. 6701b, Texas statute, is not applicable when the driver and the rider in an automobile are engaged in a joint enterprise. In *Johnson v. Smither* (Tex. Civ. App. 1938), 116 S. W. (2d) 812, 814, it was said :

"We do not believe that the statute [article 6701b] was ever intended to cover cases in which the owner and the so-called guest were engaged in a joint enterprise, . . ."

The plaintiffs contend that since they were engaged in a joint enterprise with Chars, the court's holding that they were guests was improper. Had the evidence warranted determination of joint enterprise as a matter of law or fact, a directed verdict and dismissal of the complaint would have been in order, for the negligence of Chars would have been deemed imputed to the plaintiffs. In *El Paso Electric Co. v. Leeper* (Tex. Comm. App. 1933), 60 S. W. (2d) 187, 189, the court said :

"As applied to occupants of a conveyance, the doctrine of joint enterprise not only requires joint possession thereof by the joint adventurers, but they must also have joint control and responsibility for its operation."

It was also said (60 S. W. (2d) 189):

"Where persons are engaged in a common or joint enterprise and each has an equal right to direct and control the conduct of the others with respect to acts or omissions which contributed to cause an injury to one of them, the negligence of one of such persons is imputed to each of the others."

Since there was no finding that the plaintiffs were joint adventurers with negligence of Chars imputed to them, the court properly determined the issue under the Texas host-guest statute and the interpretation of the same by the highest courts of Texas.

*By the Court.*—Judgment affirmed.