Ralph BONNEY, Appellant,

v.

**SAN ANTONIO TRANSIT COMPANY**
et al., Appellees.

No. 13348.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 8, 1958.

Rehearing Denied Nov. 5, 1958.

**70**

———◆———

Stahl & Sohn, San Antonio, Linnan &
Lynch, Algona, Iowa, for appellant.

Lang, Byrd, Cross, Ladon & Oppenheimer, San Antonio, for appellees.

BARROW, Justice.

In the original opinion, prepared by Chief Justice Murray, we reversed and remanded the case on the ground that the evidence was insufficient to support the jury's finding that the plaintiff was engaged in a joint enterprise. Appellant has filed a motion for rehearing in which he contends that we were in error in holding the evidence insufficient, and that we should have reversed and rendered the case on the ground that there was no evidence to support the finding. We have reconsidered the record and have reached the conclusion that not only is there some evidence, but sufficient evidence, to support the finding. Our original opinion is, therefore, withdrawn and the following opinion delivered in lieu thereof.

This suit was instituted by Ralph Bonney against the San Antonio Transit Company and its employe, Oscar D. Reyes, seeking to recover damages for personal injuries sustained when an automobile in which Bonney was riding collided with a bus owned by the Transit Company and driven by Oscar D. Reyes. The collision occurred on February 19, 1954, in the City of San Antonio, at the intersection of Navarro and St. Mary's Streets. The automobile in which Bonney was riding was owned and driven by Vern Shipler.

The trial was to a jury and resulted in judgment that Bonney take nothing, from which judgment he has prosecuted this appeal.

The jury found negligence and proximate cause against appellees, and fixed appellant's damages at $25,000. The jury also found negligence and proximate cause against Vern Shipler, the owner and driver of the automobile in which appellant was riding, but further found that Vern Shipler's negligence was not the sole proximate cause of the collision.

The appellees pleaded joint enterprise between Bonney and Vern Shipler. On this defense the jury found, in answer to Issue No. 42, that Bonney did not exercise any control over the driver of the Shipler automobile, but, in answer to Special Issue No. 43, that he had a right to exercise such control. Appellant contends: (1) That there was no evidence to support the jury's answer to Issue No. 43; (2) that there was not sufficient evidence to support such issue; (3) that the answer was so against the overwhelming preponderance of the evidence as to be manifestly wrong. The evidence shows that Vern Shipler lived in Burt, Iowa. He had an uncle by the name of Russell Shipler, and a cousin by the name of Stanley Shipler living in San Antonio, Texas. Vern Shipler decided to visit his relatives and to make the trip in his 1951 Packard four-door automobile. His uncle, Bryan (Brink) Shipler, who lived at Swea City, Iowa, decided to go with him. He also asked Earl

Ackerman and appellant, Ralph Bonney, to accompany him, as they knew his San Antonio relatives. Before they left Burt, Iowa, they all decided that they would make up a "kitty" by each contributing an equal amount, and out of this "kitty" they would pay for all gas and oil used on the trip, and for their meals and lodging incidental to the trip. Each member of the party contributed either $10 or $20 to the "kitty", the witnesses were uncertain which. They elected appellant treasurer, and he kept the "kitty" and paid all the expenses. Before leaving Burt, Iowa, they got a map and agreed upon the route to be taken. They generally agreed upon the stops they would make for coffee, meals or gas, and when they made those stops they would look at the map and decide where they would stop next, and to see what was ahead. They spent one night at a motel in Oklahoma and paid their bill out of the "kitty." When the "kitty" would run low they would make additional contributions to it. Appellant testified that he would call upon the others to make the additional contributions. When they left Burt, Iowa, Vern Shipler had his car full of gas and oil, and they all agreed that when they returned they would refill his car with gas and oil. Appellant testified that at the end of their visit in San Antonio, they agreed upon the time to start back home. They made a trip to Mexico and paid the cost out of the "kitty". Brink Shipler, while in San Antonio, received a message that there was sickness in his family and flew back to Iowa, leaving only three of them to make the return trip in the car. On the trip down from Iowa, Vern Shipler and Brink Shipler sat on the front seat and Brink did some of the driving.

■ Where persons are engaged in a common or joint enterprise, and each has an equal right to direct and control the conduct of the others with respect to the acts or omission which contributed to cause the injury, the negligence of one of such persons is imputed to each of the others. 65 C.J.S. Negligence § 158, p. 798; LeSage

v. Pryor, 137 Tex. 455, 154 S.W.2d 446; Garrett v. Brock, Tex.Civ.App., 144 S.W. 2d 408. Where the common purpose or enterprise involves the use of an automobile, each person must have some voice and right to be heard in its control and management. Garrett v. Brock, supra. The mere fact that the occupant has no opportunity to exercise actual physical control is immaterial. Ownership of the vehicle is an important circumstance, but is not conclusive. Blashfield, Automobile Law, Vol. 4, Part 1, § 2372, p. 496; Murphy v. Keating, 204 Minn. 269, 283 N.W. 389. It is commonly a question of fact for the jury to say whether a joint enterprise exists between the driver and another occupant of the automobile, except where the evidence as to the existence of such a relation is insufficient to go to the jury. Blashfield, Automobile Law, Vol. 4, Part 1, § 2382, p. 500. The relationship must be based upon an agreement, expressed or implied. El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187.

In this case there is no dispute that the parties were engaged in a joint mission, undertaking and adventure. The court impliedly so found, and no complaint is made of that finding. It was an issue of fact and appellant made no request that it be submitted to the jury. The only remaining question is the joint right to direct and control the operation of the automobile.

The evidence is sufficient to support the jury's finding that appellant, Bonney, had the right to exercise some control over the driver in the operation of said automobile. This is not a case where a mere guest makes voluntary contributions to the expenses of a trip. This was a planned trip, entered into by agreement of the parties. They agreed upon where they were going, when they would start and when they would return. They agreed upon the routes they would take, and where and when they would make stops. They agreed upon how they would split the expenses, not only of the gas and oil for the automobile, but

their food and lodging on the trip. They were careful to elect a treasurer of their joint funds, and have him pay the expenses, thus keeping the "kitty" separate from their private funds and keeping strict account of the joint expense fund. When Vern Shipler and Brink Shipler occupied the front seat on the way down, Brink shared the driving duties with Vern. Inasmuch as appellant, Bonney, had been moved up to the front seat for their return trip, it may be reasonably inferred he was to share in the actual driving. This was an extended trip of some 2,600 miles, planned and agreed upon in detail. The payment by the parties, other than the owner, of their agreed share of the expenses would constitute a consideration for the right to an equal voice in the manner of performance, and an equal right to control over the automobile. Lampe v. Tyrell, 200 Wash. 589, 94 P.2d 193. It is noted that where the owner of the automobile is actually operating the same, or where he is present in the car, it is inferred that he is in control of the car, but this inference is not conclusive, it presents an issue of fact for the jury. In this case there is ample evidence to the contrary. The facts are undisputed and come from appellant and his witness. The right of Bonney to exercise joint control of the car is a reasonable deduction which the jury might draw from all the facts and circumstances.

In determining the question of whether or not the verdict of the jury is supported by evidence, the appellate court must view the evidence in the light most favorable to the successful party, disregarding all evidence that is adverse thereto, and indulge every legitimate conclusion that is favorable to him. Texas Prudential Ins. Co. v. Knighten, Tex.Civ.App., 186 S.W.2d 843; Mortensen v. Mortensen, Tex.Civ.App., 186 S.W.2d 297; Glenn v. Glenn, Tex.Civ.App., 183 S.W.2d 231.

In Douty v. Delta Drilling Co., Tex.Civ. App., 264 S.W.2d 164, 167, writ refused n. r. e., Douty, while riding in a car owned and driven by Glynn Holder, and while they were returning from a joint fishing trip, was injured in a collision with another car. Recovery was denied on the finding of the jury that they were engaged in a joint enterprise. The Court in passing upon the question said:

"In the case at bar the facts and circumstances surrounding the acts and conduct of Holder, the driver of the car, and appellant who was riding with him, show that they were intimate friends of long standing, that they were fishing partners or buddies and that they used each other's car on the different occasions in which to go fishing. Fishing was their joint recreation. As stated by one of the witnesses, sometimes they went in one car and sometimes in the other. When they went in appellant's car to Cherokee or some fishing place nearby their home, appellant paid the expenses. On long trips when expenses were greater they would share them. Their arrangement on short fishing trips of using their cars and paying the expenses turnabout was tantamount to sharing expenses with one another on each trip. For when the overall picture is looked to, that is what their arrangement amounted to. From their close friendship and from the use of each other's cars, even though one of them was in charge of driving it, the one not driving impliedly, at least, had equal control with the other of the operation of the car. Douty stated in his testimony that if he had seen the truck approaching on the occasion of his injury he would have cautioned or warned Holder about it. In our opinion the facts and circumstances surrounding this trip up until the time of appellant's injury raised a question of fact and were sufficient to require the court to submit the issue to the jury of joint enterprise as between Douty and Holder."

This case is directly in point, except that in the Douty case an agreement was in-

ferred from the close friendship of the parties, their practice of fishing together, and from the use of each other's cars, whereas in the case at bar the parties actually had an agreement.

The evidence is sufficient to support the jury's finding in response to Special Issue No. 43.

■ Viewing the facts from the entire record, we have concluded that the finding of the jury that appellant, Bonney, had the right to control the action of the driver in the operation of the automobile, is not so against the overwhelming preponderance of the evidence as to be manifestly wrong. The evidence is undisputed and is ample to overcome the presumption or inference that the owner of the car, being present, was in control of the operation of the vehicle.

■ Appellant contends that the answers of the jury to Special Issues Nos. 42 and 43 are in irreconcilable conflict. This contention is overruled. First of all, these findings are not in conflict. The jury, in answer to Special Issue No. 42, found that appellant did not exercise any control over the operation of the automobile. In answer to Special Issue No. 43, the jury found that he had the right to exercise control.

"The conflict in findings that destroys the verdict is that irreconcilable difference of finding with respect to an indispensable fact in issue in the case where both findings cannot be true, but one or the other must of necessity be false." 41-B Tex.Jur., § 582, p. 802, quoting from Speer's Special Issues, § 431, and quoted with approval in Ford Rent Co. v. Hughes [Tex.Civ.App.], 90 S.W.2d 290; Anding v. Queener [Tex.Civ.App.], 138 S.W.2d 126; Getzwiller v. Ferg[e]son [Tex.Civ. App.], 145 S.W.2d 913; Graham v. Dallas Ry. & Terminal Co. [Tex.Civ. App.], 165 S.W.2d 1002. . .

"In determining whether jury findings are in irreconcilable conflict, the test is whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant." 41-B Tex.Jur., § 580, p. 794.

■ It is apparent that the two findings are not in conflict at all, both can at the same time be true. Moreover, the issue as to whether appellant did or did not actually control the operation of the vehicle was only an evidentiary fact, to be considered along with the other facts in determining existence or non-existence of the right of control. It is the right of control, and not the exercise of the right, which is the ultimate, controlling and indispensable issue. El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187.

The judgment is affirmed.

## W. O. MURRAY, Chief Justice.

I do not concur in the opinion of the majority.

The majority have denied to appellant, Bonney, any recovery for his injuries caused by the negligence of the Transit Company on the theory that Vern Shipler, the owner and driver of the automobile, and Bonney were engaged in a joint enterprise and, therefore, the contributory negligence of Shipler is imputed to Bonney, which bars his recovery.

The issue of joint enterprise was not submitted to and passed on by the jury, only two questions were submitted, No. 42, asking whether Bonney exercised any control over the Shipler car, to which the jury answered that he did not, and No. 43, which asked the jury whether or not Bonney had any right of control of the Shipler car, to which the jury answered that he did.

It occurs to me that the theory of joint adventure was, therefore, abandoned and the defense of the Transit Company was

thereafter based entirely upon the single fact question as to the right of Bonney to control the Shipler car. The right of control is a pure fact question which must be supported by the evidence. When the jury has found that a joint adventure exists, supported by sufficient evidence, then a legal presumption arises of joint and equal control of the car. Poutre v. Saunders, 19 Wash.2d 561, 143 P.2d 554. However, the majority have held that Question No. 43 was a subsidiary issue on joint adventure and, therefore, the trial court could make findings on other issues relating to joint adventure that were not submitted to the jury nor requested by Bonney. For the purpose of this dissenting opinion, I shall treat the holding as correct. Thus, the sole question presented is whether or not the evidence is sufficient to support a finding of joint adventure.

There are four elements which constitute joint adventure, namely, (1) a contract, (2) a common purpose, (3) a community of interests, (4) an equal right to voice accompanied by an equal right of control. Carboneau v. Peterson, 1 Wash. 2d 347, 95 P.2d 1043.

In my opinion the evidence here is insufficient to show that Shipler and Bonney were engaged in a joint enterprise at the time Bonney was injured.

The facts are undisputed and are very clear. Vern Shipler resided in Burt, Iowa, and decided to make a trip to San Antonio, Texas, to visit his uncle and cousin who resided there. He decided to make the trip in his 1951 Packard automobile. He did not want to travel by himself but wanted company, so he invited his uncle, Bryan (Brink) Shipler, who lived at Swea City, Iowa, and two of his friends to go along with him. They accepted the invitation.

Vern Shipler was going to Texas to visit his relatives, and Ralph Bonney and the other two men were going along just for the ride and for a vacation. Either before they left or after they were on the road, they made up a "kitty" out of which gas,

oil, meals, and other similar expenses were to be paid. This was a voluntary contribution on the part of the guests, because they did not want to "sponge" off Vern Shipler. They did not offer to pay anything for the use of the car or to pay the cost of repairs in the event of a wreck, such as the one that did occur. Not one word was said about who was to do the driving, or who was to have control of the car. They all examined a map and agreed upon the route to be taken and along the way they used the map to select places to stop for gas, meals, etc.

To my mind this shows nothing more than four friends taking a pleasure trip with a common destination, but with no common or mutual purpose. Vern Shipler was coming to San Antonio to see his relatives and the others were coming just for the ride and a vacation. Rosenstrom v. North Bend Stage Line, 154 Wash. 57, 280 P. 932. This seems to be the leading case on the question of community of interests. It was there held that two boys making a trip to pick up the key of each to his own locker, had no community of interests. Making up the "kitty" was nothing more than a friendly gesture or a free will offering on the part of the guests. The using of the map to select the route and the places to stop, was something that any gracious host would have gladly extended to his guests, so long as it did not materially interfere with his overall plan. Bonney never drove at all, and never in any way attempted to take over the driving of the car. Vern Shipler drove all the way coming down, except his uncle, Bryan (Brink) Shipler, relieved him for a time on one occasion, while Vern Shipler sat upon the front seat, where he was presumed in law to still be in full charge of his own car. Johnston Testers, Inc., v. Taylor, Tex.Civ. App., 309 S.W.2d 117. Vern Shipler was still driving his own car when the collision occurred.

These facts, to my mind, show nothing more than that Vern Shipler as host and three of his friends as guests were taking

a pleasure trip. While they had a common destination, they had no community of interests in the purpose of the trip. The fact that the guests paid part of the expenses of the trip was nothing more than a generous offer on their part. Blashfield, Automobile Law, Vol. 4, Part 1, § 2372, p. 496; Raub v. Rowe, Tex.Civ.App., 119 S. W.2d 190, writ refused; Noel v. Lapointe, 86 N.H. 162, 164 A. 769; Eubanks v. Kielsmeier, 171 Wash. 484, 18 P.2d 48; Coleman v. Bent, 100 Conn. 527, 124 A. 224; Moen v. Zurich General Accident & Liability Ins. Co., 3 Wash.2d 347, 101 P.2d 323; Poutre v. Saunders, 19 Wash.2d 561, 143 P.2d 554; Williamson v. Fitzgerald, 116 Cal.App. 19, 2 P.2d 201; Manos v. James, 7 Wash.2d 695, 110 P.2d 887; Carboneau v. Peterson, 1 Wash.2d 347, 95 P.2d 1043.

The relationship of parties to a joint adventure is a far-reaching matter and prevents one person from recovering damages proximately caused by the negligence of another person because a third person has been contributorily negligent. In other words, it authorizes the imputing of the negligence of one person to another, and where the owner and driver of a car invites friends to go on a pleasure trip with him, his guests should not be found to be joint adventurers with him simply because they volunteered to pay part of the cost of gas and oil, unless the evidence clearly shows that they intentionally entered into a solemn contract making themselves joint adventurers. Joint adventure must be based on contract, either expressed or implied. Mere loose conversation and the doing of social amenities that might be expected between friends on a pleasure trip should not be construed as constituting them joint adventurers, and thereby authorizing the imputing of the negligence of the driver to them, and rendering them liable for an injury proximately caused by such driver to another, or preventing one of such passengers from recovering from a third person for injuries proximately caused by the negligence of the third person. The rule is to the contrary where the purpose of the trip is business. Carboneau v. Peterson, 1 Wash.2d 347, 95 P.2d 1043.

It is a difficult matter for more than one person at a time to control the driving of an automobile, especially as to things that happen suddenly and unexpectedly, and, therefore, where an owner of an automobile is driving his own car on a pleasure trip with his friends who were invited to ride with him, the law presumes that he and no one else is in full control of his own car, and it takes strong and clear proof to show that he has given an equal right to another to control the driving of his own automobile. Coleman v. Bent, 100 Conn. 527, 124. A. 224.

The only Texas case I have been able to find to the contrary is the one cited in the opinion of the majority, Douty v. Delta Drilling Co., Tex.Civ.App., 264 S.W.2d 164, in which the Supreme Court refused a writ of error, n. r. e. In that case the jury found that Douty, the appellant, failed to keep a proper lookout for his own safety, that he failed to warn Glynn Holder, owner and driver of the car in which Douty was riding, of the approach of a vehicle on the highway, and that he failed to protest to Glynn Holder of his entering upon and attempting to cross the highway without first determining that he could do so with safety. Everybody will agree that if the passenger himself was guilty of contributory negligence in these three particulars he could not recover, and it would be immaterial whether he was a joint adventurer with the owner. What was said by the Court of Civil Appeals in that case about there being a joint adventure is so out of line with the great weight of authority cited above that I conclude the Supreme Court in refusing the writ n. r. e., intended only to approve that part of the decision that held one who is himself guilty of contributory negligence cannot recover for his injuries.

The majority also cite with approval some of the dicta found in Lampe v. Tyrell, 200 Wash. 589, 94 P.2d 193. What was

actually held in that case is very much in line with my position in this case.

Even if it be regarded that Bonney by contributing to the "kitty" was paying for his transportation and was therefore a paying passenger, still this would not invoke the doctrine of imputed negligence. Some states hold that a pleasure trip cannot constitute a joint venture. Poutre v. Saunders, 19 Wash.2d 561, 143 P.2d 554. In Burnett v. Howell, Tex.Civ.App., 294 S.W.2d 410, 411, the Court said:

> "Appellee contends that under the holding of Raub v. Rowe, Tex.Civ. App., 119 S.W.2d 190, 193 (error ref.) that the payment for gasoline or a portion of the automobile expense by one accompanying the driver and owner of an automobile is not payment for transportation under the meaning of Art. 6701b, V.A.C.S. That case holds and we concede it to be a well settled law, that when one is invited to ride with the owner on a trip for their mutual pleasure that the payment for the gas and oil or a portion thereof even though by prior agreement, is merely an exchange of courtesies, and that such would not constitute payment for transportation under the meaning of said Art. 6701b. In the case of Raub v. Rowe, supra, the moving and prime cause of the trip to be taken was a mutual desire of the parties to visit a relative. The payment by the rider of a portion of the automobile expense was merely incidental."

I think that the majority rule governing the question here presented is well stated in McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909, 912, 913, wherein the Court said:

> "The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such ex-

change would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtained under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. Chaplowe v. Powsner, 119 Conn. 183, 175 A. 470, 472, 95 A.L.R. 1177. * * *

> "On the other hand, following the precepts and rules of construction herein noted, the cases indicate, either by a direct holding or by recognition, that where the relationship between the parties is one of business and the transportation is supplied in the pursuit thereof for their mutual benefit, compensation has been given and the plaintiff is a passenger and not a guest."

As before stated, the facts in this case are undisputed. They show clearly that Vern Shipler decided to make a pleasure trip to Texas and invited Bonney and the others to go along with him, simply for company. There was no mention on his part of any consideration. The "kitty" was an afterthought, a freewill offering and an exchange of friendly courtesies between Vern Shipler and his guests. Burnett v. Howell, Tex.Civ.App., 294 S.W.2d 410; Raub v. Rowe, Tex.Civ.App., 119 S.W.2d 190, writ refused. There was not one word said about who was going to do the driving and Vern Shipler drove his own car, and was driving it at the time of the accident. Bryan (Brink) Shipler relieved him only one time, and during that time Vern Shipler sat on the front seat with Brink, where it would be presumed in law to still be in full charge of his car. Under these circumstances, Vern Shipler was the host and Bonney his guest and not even a paying guest at the time of the accident. McCarty v. Moss, Tex.Civ.App., 225 S.W.2d 883; Burnett v. Howell, supra; Raub v. Rowe, supra; Urban v. Chars, 1 Wis.2d 582,

85 N.W.2d 386. Joint adventure is not in the case. Bonney did not have any right of control over Vern Shipler's automobile and there is no reason in the world why the negligence of Vern Shipler should be imputed to him.

It would be absurd to hold that the voluntary paying of a part of the expenses of the trip by a guest would not constitute him a paying passenger under the provisions of the guest statute, art. 6701b, Vernon's Annotated Civil Statutes, but would constitute him a joint adventurer where joint adventure has been plead.

I would grant the motion for a rehearing of appellant and here render judgment for Bonney in the amount found by the jury.